UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
--------------------------------------------X
FALLS LAKE NATIONAL INSURANCE      CIV: 22-cv-1473 (KAM) (PK)
COMPANY,

                     Plaintiff,

      -against-                 **DEFENDANT KALNITECH
                                      CONSTRUCTION CORP.'S
KALNITECH CONSTRUCTION CORP.,       L.R. 56.1
DAVS PARTNERS LLC, STALIN RODRIGO    COUNTERSTATEMENT OF
REYES ESPINOZA and ASK ELECTRICAL    <u>MATERIAL FACTS</u>
CONTRACTING CORP.,**

                     Defendants,

--------------------------------------------X

      In accordance with local Civil Rule 56.1(b), Defendant Kalnitech CONSTRUCTION

CORP. (hereinafter referred to as "Kalnitech" or "Defendant"), by its attorneys, SACCO &

FILLAS, LLP, submits the following response to Plaintiff FALLS LAKE NATIONAL

INSURANCE COMPANY's ("FALLS LAKE") Rule 56.1 Statement of Material Facts dated

November 1, 2023:

### RESPONSE TO PLAINTIFF'S STATEMENT OF MATERIAL FACTS

### <u>The Underlying Actions, including Crossclaims Between Defendants</u>

      1.     Stalin Rodrigo Reyes Espinoza ("Espinoza") commenced the lawsuit captioned

<u>Stalin Rodrigo Reyes Espinoza v. Davs Partners LLC and Kalnitech Construction Company</u>, filed

in the Supreme Court of the State of New York, County of Kings under Index Number

515197/2019 (the "First Action"). A copy of the complaint from the First Action filed by Espinoza

as well as documents sent to the insurer are attached hereto as **Exhibit "A"**.

**RESPONSE:** Admitted.

      2.     Espinoza claims, in the First Action, that on June 28, 2019, he sustained injuries

while working at 217-14 Hempstead Avenue, Queens Village, NY 11429 (the "premises") as an

employee of Jim Associates which had contracted with others to perform construction/renovation work at the premises. (Ex. A p. 7 – 7 ¶¶ 25, 26, 31).

**RESPONSE:**  Admitted that it is alleged in the First Action that Espinoza sustained an injury at the premises located at 217-14 Hempstead Avenue, Queens, New York, but denied that it is alleged in the First Action that such injury was sustained during the course of Espinoza's employment with Jim Associates.  In the complaint in the First Action, Espinoza does not make any allegations as to the terms of his employment or the name of his employer. *See* Exhibit A to Plaintiff's L.R. 56.1 Statement of Material Facts.

3.      Espinoza, in the First Action, alleged that Davs and/or Kalnitech hired Jim Associates pursuant to a written contract and/or agreement to perform work at the premises. (Ex. A p. 6 ¶ 24, p. 9 ¶ 46).

**RESPONSE:** Admitted.

4.      On October 21, 2019, Davs filed an answer and asserted affirmative defenses and crossclaims against Kalnitech for recovery from same to the extent that Davs is held liable to Espinoza for his claims against Davs.  A copy of Davs' Answer is attached hereto as **Exhibit "B"**.

**RESPONSE:** Admitted

5.      Davs admitted in its answer that it hired and/or retained Kalnitech pursuant to a written contract agreement to perform work at the premises. (Ex. B p. 3 ¶ 13, 19).

**RESPONSE:** Admitted in part and denied in part.  Admitted that Davs admitted in its answer that it hired Kalnitech pursuant to a written contract or agreement but denied that Davs admitted it entered into an agreement with Kalnitech to perform work at the Premises. Davs' Answer (Exhibit B to Plaintiff's L.R. 56.1 Statement of Material Facts at ¶13**)** denies the allegation

contained in paragraph 22 of the Espinoza Complaint, which sets forth "that on or prior to June 28, 2019, DAVS retained KALNITECH to provide work, labor and/or services at the premises located at 217-14 Hempstead Avenue, Queens, NY 11429." *See* Exhibit A to Plaintiff's L.R. 56.1 Statement of Material Facts at ¶22.

Paragraph 19 of the Answer, cited by Plaintiff in this Statement of Material Facts, only contains Davs' admission that Kalnitech entered into an agreement and contract by which Kalnitech was to provide work labor and services for the project, but it is not specified in the complaint with whom that contract was made. *See* Exhibit A to Plaintiff's L.R. 56.1 Statement of Material Facts at ¶44 and Exhibit B to Plaintiff's L.R. 56.1 Statement of Material Facts at ¶19.

6. Davs asserted crossclaims against Kalnitech for contractual and common law indemnification and contribution to the extent that Davs is held liable to Espinoza for his claims against Davs. (Ex. B p. 8 – 10).

**RESPONSE:** Admitted.

7. On November 4, 2019, Kalnitech filed an answer and asserted affirmative defenses and cross claims against Davs. A copy of Kalnitech's Answer is attached hereto as **Exhibit "C"**.

**RESPONSE:** Admitted.

8. Kalnitech denied that it contracted with Davs. (Ex. C p. 2 ¶ 6).

**RESPONSE:** Admitted

9. Kalnitech admitted, in the First Action, that it was hired to perform construction work at the premises. (Ex. C p. 3 ¶ 10).

**RESPONSE:** Admitted.

10. Kalnitech asserted crossclaims against Davs for contractual and common law indemnification, contribution, and insurance coverage to the extent that Kalnitech is held liable to Espinoza for his claims against Kalnitech. (Ex. C p. 10 – 12).

3

**RESPONSE:** Admitted.

11.     Espinoza commenced a second lawsuit captioned <u>Stalin Rodrigo Reyes Espinoza</u> <u>v. Ask Electrical Contracting Corp.</u>, filed in the Supreme Court of the State of New York, County of Kings County under Index Number 514760/2022 ("The Second Action"). A copy of the complaint from the Second Action filed by Espinoza is attached hereto as **Exhibit "D"**.

**RESPONSE:** Admitted.

12.     The claim in the Second Action is that on June 28, 2019, Espinoza allegedly sustained injuries while working at 217-14 Hempstead Avenue, Queens Village, NY 11429 during the course of his employment with Jim Associates. (Ex. D p. 4 – 5 ¶¶ 18 – 25).

**RESPONSE:** Admitted that it is alleged in the Second Action that Espinoza sustained an injury at the premises located at 217-14 Hempstead Avenue, Queens, New York, but denied that it is alleged in the Second Action that such injury was sustained during the course of Espinoza's employment with Jim Associates.  In the complaint in the Second Action, Espinoza does not make any allegations as to the terms of his employment or the name of his employer. *See* Exhibit C to Plaintiff's L.R. 56.1 Statement of Material Facts.

13.     Espinoza, in the Second Action, alleged that Ask hired Kalnitech pursuant to a written contract and/or agreement.  (Ex. D p. 4 ¶ 17).

**RESPONSE:** Admitted.

14.     Espinoza, in the Second Action, alleged that Ask hired Jim Associates pursuant to a written contract and/or agreement.  (Ex. D p. 4 ¶ 18).

**RESPONSE:** Admitted.

15.      On September 9, 2022, Ask filed an answer and asserted affirmative as well as referenced reservation of rights for crossclaims against others not in that lawsuit.  A copy of Ask's

Answer is attached hereto as **Exhibit "E"**.

**RESPONSE:** Admitted.

16.     Ask's answer identified that it would assert crossclaims and reserved the right to add counterclaims, crossclaims and institute a third-party action at a later date. (Ex. E p. 1, 10)

**RESPONSE:** Admitted.

17.     Ask commenced a third-party action in the Second Action, on June 16, 2023, against Jim Associates.  A copy of the third-party complaint from the Second Action filed by Ask, with exhibits to that pleading, is attached hereto as **Exhibit "F"**.

**RESPONSE:** Admitted.

18.     Ask, in the third-party complaint in the Second Action, asserted claims for contractual indemnification and additional insured coverage pursuant to the July 15, 2019 Jim Associates Master Subcontract Agreement attached as an Exhibit to that pleading.  (Ex. F p. 7, 8 – 9, 39 – 48).

**RESPONSE:** Admitted.

### The Falls Lake Policy and Disclaimers of Coverage

19.     Falls Lake issued policy number SKP 2004493 10 to Kalnitech Construction Corp. ("Kalnitech") (the "Policy"). See attached hereto as **Exhibit "G"** a redacted copy of the Policy issued by Falls Lake to Kalnitech.

**RESPONSE:** Admitted.

20.     The Policy contained the following additional insured endorsement found on form CG 20 33 04 13:

*       *       *

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION**

**AGREEMENT WITH YOU**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.**   With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

**1.** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

    **a.** The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    **b.**   Supervisory, inspection, architectural or engineering activities.

6

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

\*       \*       \*

(Ex. G p.29).

**RESPONSE:** Admitted.

21.    The Policy also contained the following additional insured endorsement found on form AE 01 49 11 15.

\*       \*       \*

**ADDITIONAL INSURED – OWNERS, LESSEES, OR CONTRACTORS – COMPLETED OPERATIONS – AUTOMATIC STATUS WHEN REQUIRED IN A WRITTEN CONTRACT WITH YOU**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who is An Insured** is amended to include as an additional insured any person or organization when you and such person or organization have agreed in a "written contract" that such person or organization be added as an additional insured on your policy.  Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole or in part, by "your work" performed for that additional insured and included in the "products-completed operations hazard".

However, the insurance afforded to such additional insured:

**1.**  Only applies to the extent permitted by law; and

**2.**  Will not be broader than that which you are required by the "written contract" to provide for such additional insured.

**B.**  With respect to the insurance afforded to these additional insureds,

7

the following additional exclusions apply:

This insurance does not apply to:

1.  "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

    a.  The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b.  Supervisory, inspection, architectural or engineering activities.

    This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

C.  With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits of Insurance:**

    The most we will pay on behalf of the additional insured is the amount of insurance.

1.  Required by the "written contract" you have entered into with the additional insured; or

2.  Available under the applicable Limits of Insurance shown in the Declarations; **whichever is less. P 57**

    This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

D.  The following is added to **4. Other Insurance**, part of **SECTION IV – COMMERICAL GENERAL LIABILITY CONDITIONS:**

    If the "written contract" specifically requires that this insurance apply on a primary basis or a primary and non-contributory basis, this insurance is primary to such additional insured.

E.  As respects this endorsement only, The following Definition is added to **SECTION V – DEFINITIONS**

8

A "written contract" means that part of any written contract under which you are required to include a person or organizations as an additional insured, provided that the "bodily injury", "property damage", or "personal and advertising injury" occurs:

**1.** After the signing and execution of the written contract by you;

**2.** While that part of the written contract is in effect; and

**3.** Before the end of the policy period.

*       *       *

(Ex. G p. 57).

**<u>RESPONSE:</u>** Admitted, except that section IIC2 is missing language, it reads as follows:

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance.

**1.** Required by the "written contract" you have entered into with the additional insured; or

**2.** Available under the applicable Limits of Insurance shown in the Declarations; *whichever is less.*

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

*See* Exhibit G to Plaintiff's L.R. 56.1 Statement of Material Facts at p. 57 at

IIC2(C) (emphasis added).

22.     The Policy further contained the following injury to employee endorsement found

on form SN 0006 0713:

*       *       *

**EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Exclusion 2.e Employers Liability is deleted and replaced by the following:

2.e      Employer's        Liability

This insurance does not apply to:

(1) "Bodily injury" to any "employee" of any insured arising out of or in the course of:

a.       Employment by any insured; or

b.       Performing duties related to the conduct of any insured's business;

(2) "Bodily injury" to any contractor or any "employee" of any contractor arising out of or in the course of the contractor or its employee performing services of any kind or nature whatsoever;

(3) Any alleged obligation of any insured to indemnify or contribute with another because of damages arising out of such "bodily injury" to an insured's employee or any contractor or any contractor's employee;

(4) "Bodily injury" sustained by the spouse, child, parent, brother or sister of any "employee" of any insured, or of a contractor, or any "employee" of any contractor as a consequence of any injury to any person as set forth in paragraph (1) and (2) of this endorsement.

This exclusion applies to all claims and suits by any person or organization for damages because of such "bodily injury," including damages for care and loss of services.

As used herein the definition of "employee" includes a "leased worker" and a "temporary worker."

This exclusion replaces the exclusion relating to "bodily injury to employees and relatives of "employees" contained in the Exclusions Section of the policy to which this endorsement is attached and the definition of "employee" in said policy.

All other terms and conditions remain unchanged.

10

*     *     *

(Ex. G p.64).

**RESPONSE:** Admitted

23.     Falls Lake denied coverage to Kalnitech and all parties as to the claims from the
Espinoza accident as asserted in both the First and Section Action by letters dated September 3,
2019, September 16, 2019, and June 20, 2022 (attached hereto individually as **Exhibit "H, I, and
J"**).

**RESPONSE:** Admitted as to Exhibits H and J.  Denied as to Exhibit I, as it is only comprised of a
cover letter without attachment.

24.     Falls Lake denied coverage to the named insured, Kalnitech, as well as all parties
who may seek coverage under the Policy as an additional insured for the claims asserted by
Espinoza and any crossclaims amongst defendants for contribution and indemnification arising
from injury to Espinoza as a worker for a contractor performing work for any insured at the
premises.  (Ex. H, I, J).

**RESPONSE:** Admitted as to Exhibits H and J.  Denied as to Exhibit I, as it is only comprised of a
cover letter without attachment.

25.     The September 3, 2019, September 16, 2019, and June 20, 2022 disclaimer letters
denied coverage pursuant to the "Exclusion of Injury to Employees, Contractors and Employees
of Contractors" provision, which barred coverage as to claims arising from bodily injury to an
employee of Kalnitech and/or injury to a contractor or an employee of a contractor working for
any insured, including claims by other for contribution and indemnification that resulted from such

bodily injury to an employee of any contractor working for any insured. (Ex. H p. 5 – 6, 15, Ex. J p. 4 – 7).

**RESPONSE:** Admitted as to Exhibits H and J.  Denied as to Exhibit I, as it is only comprised of a cover letter without attachment.

26.    The September 3, 2019, September 16, 2019, and June 20, 2022 disclaimer letters referenced the requirements under the "Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in a Construction Agreement With You" endorsement of the Policy and denied coverage to the extent one did not qualify or the claim was excluded from coverage by such provision.  (Ex. H p. 11 – 13, 16 – 17, J p. 23, 26 – 28).

**RESPONSE:** Admitted as to Exhibits H and J.  Denied as to Exhibit I, as it is only comprised of a cover letter without attachment.


27.    The September 3, 2019, September 16, 2019, and June 20, 2022 disclaimer letters referenced the requirements under the "Additional Insured – Owners, Lessees or Contractors – Completed Operations – Automatic Status When Required in a Written Contract With You" endorsement of the Policy and denied coverage to the extent one did not qualify or the claim was excluded from coverage by such provision.  (Ex. H p. 13 – 15, 16 – 17, J p. 24– 28).

**RESPONSE:** Admitted as to Exhibits H and J.  Denied as to Exhibit I, as it is only comprised of a cover letter without attachment.


28.    The June 20, 2022 disclaimer letter specifically noted that Falls Lake was not aware of any claims against Ask until June 2022 and that the same grounds for denial of coverage under the Policy applied to Ask, as well as all others, for the accident and injuries claimed by Espinoza,

as well as claims asserted by Ask against other and visa versa, and to the extent that Ask sought coverage under the Policy as an insured. (Ex. J p. 2 – 28).

**RESPONSE:** Admitted.


### This Action And The Evidence That Warrants Summary Judgment

29.     Falls Lake, in this declaratory judgment action, seeks, in the amended complaint, relief as to all parties with respect to the denial of coverage under the Policy for all claims asserted in both of the Underlying Actions, but on this motion, Falls Lake seeks a ruling as to the applicability of the "Exclusion of Injury to Employees, Contractors and Employees of Contractors" provision and the two Additional Insured provisions only, without waiving the other grounds for denial of coverage set forth in the several disclaimer letters issued by Falls Lake and the amended complaint.   A copy of the amended complaint is attached hereto as **Exhibit "K"** (see also Ex. H, I, J, K).

**RESPONSE:** Can neither admit nor deny the accuracy and validity of Plaintiff's statement as the assertions contained therein are not supported by Affidavit from Plaintiff or by the documentary evidence appended to Plaintiff's L.R. 56.1 Statement of Material Facts. This statement is objected to, as it is a legal argument and not a statement of a material fact as to which Plaintiff contends there is no genuine issue to be tried, as required by L.R. 56.1(a).

30.     The claims asserted in the Underlying Actions all arise from work performed pursuant to the "Short Form Prime Contract Between Owner & Contractor" ("Prime Contract") entered into on or about March 11, 2019, by General Contractor, ASK Electrical Corp. ("Ask") and the Owner, DAVS Partners LLC ("DAVS"), for the project known as 217-14 Hempstead Avenue, Queens Village, NY 11429. See attached hereto as **Exhibit "L"** a copy of the Prime

Contract that was included and authenticated as Exhibit A of DAVS' and Ask's Supplemental Response to Plaintiff's First Set of Requests for Documents and Other Disclosure in this action, which is also attached hereto part of this Exhibit.  See also attached hereto as **Appendix Exhibit "1"** a copy of David Kleeman's deposition transcript, on behalf of Davs and a principal of both Davs and Ask, wherein the Prime Contract was authenticated.  (Ex. 1 p. 61).

**RESPONSE:** Admitted.

31.     The Prime Contract, on page 1, refers to Ask as the contractor.  (Ex. L p. 1).

**RESPONSE:** Admitted.

32.     The Prime Contract also refers to DAVS as the owner.  (Ex. L p.1).

**RESPONSE:** Admitted.

33.     The Prime Contract provides that the work to be performed was a complete renovation and buildout at the premises. (Ex. L p. 1).

**RESPONSE:** Admitted.

34.     The project was identified in the Prime Contract as 217-14 Hempstead Avenue, Queens Village, NY 11429 and it was specified that it involved the renovation of the premises and the fitting-out of the premises to construct offices.  (Ex. 1 p. 38).

**RESPONSE:** Admitted.

35.     The Prime Contract sets forth terms for the contractor, Ask, to name DAVS and its agents as additional insureds under Ask's policy of insurance.  (Ex. L p.5).

**RESPONSE:** Admitted.

36.     Section 14 of the Prime Contract, entitled Insurance Requirements, stated the following:

*      *      *

The owner and their agents are to be named as an additional insured on a primary and non-contributory basis to the Contractor's Commercial General Liability and Umbrella policies using appropriate ISO forms that include Broad Form Contractual Liability, Premises Operations Liability, Contractual Liability, Advertising and Personal Injury Liability and Products/Completed Operations Liability, or by using a company specific endorsement that provides equivalent protection. Subcontractor's Commercial General Liability and Umbrella policies will not have any 3rd Part Action Over Exclusions or Employee Injury Exclusions.

\*     \*     \*

(Ex. L p. 5).

**RESPONSE:** Admitted.

37.     The claims asserted in the Underlying Actions all arise from work performed pursuant to the March 12, 2019, contract between General Contractor, Ask, and Kalnitech ("Kalnitech Master Subcontract.") See attached hereto as **Exhibit "M,"** a copy of the Kalnitech Master Subcontract (Ex M p.8-15) that was included and authenticated in Exhibit A of DAVS' and Ask's Supplemental Response to Plaintiff's First Set of Requests for Documents and Other Disclosure, which is also attached hereto as part of this Exhibits.  In addition, see attached hereto as **Exhibit "N"** a copy of Ask's responses to demands in the Second Action which included and authenticated Ask's subcontract agreement between Kalnitech and Ask's subcontract agreement between Jim Associates.  (Ex. N).  See also attached hereto as **Appendix Exhibit "2"** a copy of Kostas "Gus" Stoupakis' deposition transcript, on behalf of Kalnitech, wherein the Kalnitech Master Subcontract was authenticated at deposition in the Underlying Actions.  (Ex. 2 p. 15, 16, 55 – 56); (Ex. 1 p. 32, 34, 74).

**RESPONSE:** Denied.  The claims asserted in the Underlying Actions arose from work performed after Kalnitech had completed its work pursuant to the Kalnitech Master Subcontract.  Kalnitech completed its work mid-June 2019, before Espinoza's accident took place.  Appendix Exhibit 2 at

p. 30, lines 10-18 and 23-25.

        The claims asserted in the Underlying Action all arise from work performed pursuant to the Jim Associates Master Subcontract Agreement, attached to Plaintiff's L.R. Statement of Material Facts as Exhibit "P". *See* Exhibit O to Plaintiff's L.R. 56.1 Statement of Material Facts at p. 5 ¶ 4, p. 20 ¶ 11 and Appendix Ex. 3 at p. 58; Appendix Ex. 4 at p. 102 and Appendix Ex. 2 at p. 41.

        38.     The Kalnitech Master Subcontract defined Ask as the contractor.  (Ex. M p.8).

**RESPONSE:** Admitted.

        39.     The Kalnitech Master Subcontract defined Kalnitech as the subcontractor.  (Ex. M p.8).

**RESPONSE:** Admitted.

        40.     In the Kalnitech Master Subcontract, Kalnitech assumed all obligations, risks and responsibilities that were assumed by Ask in its contract withs DAVS.  (Ex. M p.8).

**RESPONSE:** Admitted.

        41.     Section 2 of the Kalnitech Master Subcontract Agreement, entitled Subcontractor's Work, stated the following:

*      *      *

> With respect to the Work covered by this Subcontract and any individual Work Order, and except as expressly modified herein, Subcontractor shall have all rights which Contractor has under the Contract Documents, and Subcontractor shall assume all obligations, risks and responsibilities which Contractor has assumed towards the Owner and third parties as applicable in the Contract Documents, and Subcontractor shall be bound to Contractor in the same manner and to the same extent that Contractor is bound to the Owner or said third parties.  In case of a conflict between this Subcontract Agreement and the Contract Documents as incorporated herein, pursuant to each Work Order, the terms of the Work Order Shall prevail.

*      *      *

(Ex. M p. 8).

**RESPONSE:** Admitted.

42. The Kalnitech Master Subcontract also sets forth terms for Kalnitech to name DAVS, Ask, and their agents as additional insureds on its policy of insurance. (Ex. M p.9); (Ex. 2 p. 60).

**RESPONSE:** Admitted.

43. Section 4 of the Kalnitech Master Subcontract Agreement, entitled Subcontractor's Insurance, stated the following:

\*     \*     \*

6. Subcontractors General Liability policy shall be endorsed to include Blanket Additional Insured Endorsements CG2033 7/04 and CG2037 7/04 or acceptable equivalent forms. Subcontractor is required to include as additional insureds: the Owner, the Contractor and any other additional insured in the Owner/Contractor Agreement for ongoing work and completed operations; the additional insured coverage is on a primary and non-contributory basis. The Contractor's policy is excess of the Subcontractor's Insurance and the Contractor's insurance shall not be called upon to contribute to the Subcontractor's Insurance.

\*     \*     \*

(Ex. M. p. 9)

**RESPONSE:** Admitted.

44. Section 4 of the Kalnitech Master Subcontract Agreement, entitled Subcontractor's Insurance, also stated the following:

\*     \*     \*

Certificates of Insurance shall, without liability on the part of the **Owner** and/or **Contractor** for premiums therefor, include Additional Insured endorsements for ongoing operations and complete operations of the **Subcontractor**, as required by written contract, to include the **Contractor**, **Owner** and all parties required by the **Owner/Contractor Agreement**. Any contractor using General Liability policies issued by an insurer on the list of carriers in **Exhibit B** will be required to produce a copy of their General Liability policy for review and approval prior to beginning any work. The certificate must follow the format of the sample certificate in

**Exhibit C**.  Exhibit D lists carriers providing acceptable General Liability policies for operations in NY with exceptions regarding their acceptability for certain work.

\*          \*          \*

(Ex. M p. 10).

**RESPONSE:** Admitted, except the third line of the paragraph cited by Plaintiff contains a typo.  It should read "ongoing operations and *completed* operations of the **Subcontractor**."  *See* Exhibit M to Plaintiff's L.R. 56.1 Statement of Material Facts, at p. 10 (emphasis added).

45.     The claims asserted in the Underlying Actions all arise from injuries as a result of an accident claimed by Espinoza while he was employed by Jim Associates Corp., working on the premises.  See attached hereto as **Exhibit "O"** a copy of Espinoza's Response to Plaintiff's First Set of Requests and Other Disclosure, a copy Espinoza's Additional Disclosure, and a copy of Espinoza's Bill of Particulars from the underlying actions.  (Ex. O p. 5 ¶ 4, p. 20 ¶ 11).  Also, attached hereto as **Appendix Exhibit "3 and 4"** is a copy of Espinoza's, the underlying plaintiff, deposition transcript. (Ex 3 p. 58; Ex. 4 p. 102); see also (Ex. 2 p. 41).

**RESPONSE:** Admitted.

46.     Jim Associates Corp. performed work at the premises pursuant to its contract with Ask, referenced here as the "Jim Associates Master Subcontract Agreement". See attached hereto as **Exhibit "P"** a copy of the Jim Associates Master Subcontract Agreement that was included in Exhibit A of DAVS' and Ask's Supplemental Response to Plaintiff's First Set of Requests for Documents and Other Disclosure, which is also attached hereto.

**RESPONSE:** Admitted.

47.     The Jim Associates Master Subcontract designated Ask as the contractor for the work described.  (Ex. P p.8).

**RESPONSE:** Admitted.

48.     The Jim Associates Master Subcontract designated Jim Associates as the subcontractor for the work described.  (Ex. P. p.8).

**RESPONSE:** Admitted.

49.     Under the Jim Associates Master Subcontract, Jim Associates assumed all obligations, risks and responsibilities that were assumed by Ask in its contract withs DAVS.  (Ex. P p.8).

**RESPONSE:** Admitted.

50.     Jim Associates submitted several invoices and/or proposals to Ask and Gus, the principal of Kalnitech, for work at the premises, dated May 27, 2019 (Ex. R p. 17), June 12, 2019 (Ex. R p. 19), June 26, 2019 (Ex. R p.15), July 18, 2019 (Ex. Q p.6), and September 3, 2019 (Ex. Q p.26). See attached hereto as **Exhibit "Q"** and **Exhibit "R"**, respectively, a copy of Jim Associate's documents produced via subpoena and a copy of Jim Associate's documents that were produced as Exhibit B of DAVS' and Ask's initial Response to Plaintiff's First Set of Requests for Documents and Other Disclosure in the Second Action, which authenticated said documents, also are attached hereto as part of said Exhibits.

**RESPONSE:** Admitted that Jim Associates submitted invoices and proposals to Ask.  Denied that Jim Associates submitted invoices and/or proposals to Kalnitech.  The proposal sent by Jim Associates to Gus Stoupakis on May 28, 2019 was forwarded by Kalnitech to Ask (Exhibit R to Plaintiff's L.R. 56.1 Statement of Material Facts, at p. 13).  Jim Associates did not submit proposals to Kalnitech for the project. Attached hereto as **Supplemental Appendix Exhibit "2"** is a copy of Kostas "Gus" Stoupakis' deposition transcript, on behalf of Kalnitech. [1]   *See* Supplemental

---

[1] Pursuant to the Court's rules, a Joint Deposition Appendix Transcript must be filed on ECF when the motion is fully briefed.  Kalnitech has filed, as an attachment, its Supplemental Appendix using the same Exhibit numbers as those

Appendix Ex. 2 at p. 50, lines 21-25 and p. 51, line 1.

51.     Either Gus from Kalnitech was the general contractor and/or Ask was the general contractor for the work performed at the premises, including the work claimed to have been performed by Espinoza at the time of his accident/injuries.  See attached hereto as **Appendix Exhibit "5"** a copy of Dwayne Hudson's, on behalf of Davs, deposition transcript.  (Ex. 5 p. 15, 20); (Ex. 1 p. 32, 44, 46, 76); (Ex. 2 p. 19).

**RESPONSE:** Admitted that Ask was the general contractor for the project, denied that Kalnitech was the general contractor for the project.

Kalnitech was hired as a subcontractor for the project and did not act as the general contractor.  *See* Exhibit M to Plaintiff's L.R. 56.1 Statement of Material Facts at p. 1; Supp. Appendix Ex. 2 at page 18, lines 9-21.

Ask, not Kalnitech, was in control of the project, scheduled the work and supervised the work, including Kalnitech's work. Supp. Appendix Ex. 2 at page 19, lines 2-6; Supp. Appendix Ex. 5 at p. 86, lines 16-24; Supp. Appendix Ex. 5 at p. 90, lines 3-16.

52.     Kalnitech and Ask each hired subcontractors for the project.  (Ex. 1 p. 103 – 105, 129) (Ex. 2 p.27, 28, 49).

**RESPONSE:** Admitted.

53.     Kalnitech and its subcontractors performed demo work, concrete work, painting, waterproofing, and roof patch work.  (Ex. 2. p. 28).

**RESPONSE:** Admitted.

54.     Ask hired subcontractors to perform plumbing, mechanical, HVAC, electrical, roofing, and fence work.  (Ex. 1 p. 103 – 105, 129); (Ex. 2 p. 32).

---

used in the Appendix filed by Plaintiff, with additional deposition pages included.  Counsel will coordinate a Joint Deposition Appendix to be filed when the motion is fully briefed.

**RESPONSE:** Admitted.

55.    Both Kalnitech, and David Kleeman, the principal of DAVS and Ask, had a prior relationship with Jim Associates prior to Jim working at the premises.  (Ex. 1 p. 107); (Ex. 2 p. 36, 41).

**RESPONSE:** Admitted that Davs had a prior relationship with Jim Associates, denied that Kalnitech had a prior relationship with Jim Associates.  Kostas "Gus" Stoupakis personally knew Jim Associates in connection a prior company Stoupakis was involved with. Supp. Appendix Ex. 2 at p. 56, lines 17-23.

56.    Ask hired Jim Associates.  (Ex. 1 p.32, 34); (Ex. 2 p. 33 – 34, 41, 57, 58).

**RESPONSE:** Admitted.

57.    Jim Associates was hired to perform interior finishing work. (Ex. 1 p. 107); (Ex. 2 p. 33).

**RESPONSE:** Admitted.

58.    Ask paid Jim Associates for the work performed at the premises.  (Ex. 1 p. 107 – 108).

**RESPONSE:** Admitted.

59.    All work performed at the premises was scheduled and supervised by Gus and Kalnitech. (Ex. 1 p 127, 130, 146, 148).

**RESPONSE:** Denied. Kalnitech, during its time on the project, only supervised subcontractors brought onto the project by Kalnitech (Supp. Appendix Ex. 3, p. 35, lines 4-9).  Kalnitech did not supervise any of Jim Associates' work (Supp. Appendix Ex. 3, p. 58, lines 8-10).  David Kleeman supervised and directed the work performed at the premises (*See* attached hereto as

**Supplemental Appendix Exhibit "5"** a copy of Dwayne Hudson's, on behalf of Davs, deposition transcript at p. 86, lines 16-24), and scheduled the work performed at the premises, including the work performed by Kalnitech (Supp. Appendix Ex. 5 at p. 90, lines 3-16).

60.     The Falls Lake policy's "Exclusion – Injury to Employees, Contractors and Employees of Contractors" endorsement bars coverage to all claims pertaining to Espinoza's alleged injury as an employee of a contractor for any insured in that Espinoza alleges that he was injured in the course of his employment with Jim Associates, a subcontractor retained by Davs, Ask, and/or Kalnitech, and the endorsement bars coverage even if Davs and Ask prove the requirements for status as an additional insured under the Additional Insured endorsements of the Policy, as well as applies to the claims asserted amongst Davs, Ask, and/or Kalnitech for indemnity and contribution because of bodily injury to any contractor or any contractor's employee working for any insured. (Ex. G p.64).

**RESPONSE:** Can neither admit nor deny the accuracy and validity of Plaintiff's statement as the assertions contained therein are not supported by Affidavit from Plaintiff or by the documentary evidence appended to Plaintiff's L.R. 56.1 Statement of Material Facts. This statement is objected to, as it is a legal argument and not a statement of a material fact as to which Plaintiff contends there is no genuine issue to be tried, as required by L.R. 56.1(a).

## KALNITECH'S STATEMENT OF ADDITIONAL MATERIAL FACTS

1.     The Policy contained the following endorsement language found on form CG 01 63 07 11.

### NEW YORK CHANGES – COMMERCIAL GENERAL LIABILITY COVERAGE FORM

This endorsement modifies insurance provided under the following: COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** Paragraph **1.** Insuring **Agreement** of Section I - **Coverage A Bodily Injury And Property Damage Liability** is replaced by the following:

**1. Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages even if the allegations of the "suit" are groundless, false or fraudulent.

Exhibit G to Plaintiff's L.R. 56.1 Statement of Material Facts at p. 23.

Dated: Astoria, New York
       November 30, 2023

                              BY: /s/ Shira Biegacz
                                  Shira J. Biegacz, Esq.
                                  **SACCO & FILLAS, LLP**
                                  *Attorneys for Defendant Kalnitech Construction Corp.*
                                  31-19 Newtown Avenue
                                  Astoria, NY 11102,
                                  (718) 269-2242
                                  File No.: 28464-22