UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FALLS LAKE NATIONAL INSURANCE           CIV: 22-cv-1473 (KAM) (PK)
COMPANY,

                                      Plaintiff,

       -against-

KALNITECH CONSTRUCTION CORP.,
DAVS PARTNERS LLC, STALIN RODRIGO
REYES ESPINOZA and ASK ELECTRICAL
CONTRACTING CORP.,

                                      Defendants,
------------------------------------------------------------------X

## **APPENDIX OF EXHIBITS**

| Exhibit | Description |
|---|---|
| A | Espinoza Complaint in First Action |
| B | Davs' Answer in First Action |
| C | Kalnitech's Answer in First Action |
| D | Espinoza Complaint in Second Action |
| E | Ask's Answer in Second Action |
| F | Third-Party Complaint in the Second Action |
| G | Policy issued by Falls Lake to Kalnitech (redacted as to premium) |
| H | September 3, 2019 disclaimer letter issued on behalf of Falls Lake |
| I | September 16, 2019 disclaimer letter issued on behalf of Falls Lake |

| | |
|---|---|
| J | June 20, 2022 disclaimer letter issued on behalf of Falls Lake |
| K | Amended Complaint in this Action |
| L | Short Form Prime Contract Between Owner & Contractor |
| M | Kalnitech Master Subcontract |
| N | Ask's responses to demands in Second Espinoza Action |
| O | Espinoza's Response to Plaintiff's First Set of Requests and Other Disclosure, Espinoza's Additional Disclosure, and Espinoza's Bill of Particulars from the underlying actions |
| P | Jim Associates Master Subcontract Agreement |
| Q | Jim Associate's documents produced via subpoena in First Action |
| R | Jim Associate's documents that were produced as DAVs' and Ask's Initial Response to Plaintiff's First Set of Requests for Documents and Other Disclosure in Falls Lake's Action. |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FALLS LAKE NATIONAL INSURANCE          CIV: 22-cv-1473 (KAM) (PK)
COMPANY,

                              Plaintiff,

       -against-

KALNITECH CONSTRUCTION CORP.,
DAVS PARTNERS LLC, STALIN RODRIGO
REYES ESPINOZA and ASK ELECTRICAL
CONTRACTING CORP.,

                              Defendants,
------------------------------------------------------------------X

## APPENDIX OF DEPOSITIONS

| Exhibit | Transcript of | Conducted on | Pages |
|---|---|---|---|
| 1 | David Kleeman | April 5, 2023 | 27, 28, 32, 34, 38, 44, 46, 49, 61, 74, 76, 103-105, 107-108, 127, 129-130, 146, and 148 |
| 2 | Kostas "Gus" Stoupakis | May 11, 2022 | 15-16, 19, 27, 28, 32-34, 36, 41, 49, 55, and 57-60 |
| 3 | Stalin Rodrigo Reyes Espinoza | November 17, 2021 | 58 |
| 4 | Stalin Rodrigo Reyes Espinoza | March 24, 2022 | 102 |
| 5 | Dwayne Hudson | April 11, 2022 | 15, 20 |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
FALLS LAKE NATIONAL INSURANCE         CIV: 22-cv-1473 (KAM) (PK)
COMPANY,

                            Plaintiff,        **FALLS LAKE'S**
                                           **L.R. 56.1 STATEMENT**
       -against-                     **OF MATERIAL FACTS**

KALNITECH CONSTRUCTION CORP.,
DAVS PARTNERS LLC, STALIN RODRIGO
REYES ESPINOZA and ASK ELECTRICAL
CONTRACTING CORP.,
                              Defendants,
------------------------------------------------------------------X

Plaintiff, Falls Lake National Insurance Company ("Falls Lake"), by and through its attorneys, MIRANDA SLONE SKLARIN VERVENIOTIS LLP, as and for its statement of material facts, pursuant to L.R. 56a.1. states that there is no material issue of fact with respect to the following:

**The Underlying Actions, including Crossclaims Between Defendants**

1. Stalin Rodrigo Reyes Espinoza ("Espinoza") commenced the lawsuit captioned <u>Stalin Rodrigo Reyes Espinoza v. Davs Partners LLC and Kalnitech Construction Company</u>, filed in the Supreme Court of the State of New York, County of Kings under Index Number 515197/2019 (the "First Action"). A copy of the complaint from the First Action filed by Espinoza as well as documents sent to the insurer are attached hereto as **Exhibit "A"**.

2. Espinoza claims, in the First Action, that on June 28, 2019, he sustained injuries while working at 217-14 Hempstead Avenue, Queens Village, NY 11429 (the "premises") as an employee of Jim Associates which had contracted with others to perform construction/renovation work at the premises. (Ex. A p. 7 – 7 ¶¶ 25, 26, 31).

1

3.      Espinoza, in the First Action, alleged that Davs and/or Kalnitech hired Jim Associates pursuant to a written contract and/or agreement to perform work at the premises. (Ex. A p. 6 ¶ 24, p. 9 ¶ 46).

4.      On October 21, 2019, Davs filed an answer and asserted affirmative defenses and crossclaims against Kalnitech for recovery from same to the extent that Davs is held liable to Espinoza for his claims against Davs. A copy of Davs' Answer is attached hereto as **Exhibit "B"**.

5.      Davs admitted in its answer that it hired and/or retained Kalnitech pursuant to a written contract agreement to perform work at the premises. (Ex. B p. 3 ¶ 13, 19).

6.      Davs asserted crossclaims against Kalnitech for contractual and common law indemnification and contribution to the extent that Davs is held liable to Espinoza for his claims against Davs. (Ex. B p. 8 – 10).

7.      On November 4, 2019, Kalnitech filed an answer and asserted affirmative defenses and cross claims against Davs. A copy of Kalnitech's Answer is attached hereto as **Exhibit "C"**.

8.      Kalnitech denied that it contracted with Davs. (Ex. C p. 2 ¶ 6).

9.      Kalnitech admitted, in the First Action, that it was hired to perform construction work at the premises. (Ex. C p. 3 ¶ 10).

10.     Kalnitech asserted crossclaims against Davs for contractual and common law indemnification, contribution, and insurance coverage to the extent that Kalnitech is held liable to Espinoza for his claims against Kalnitech. (Ex. C p. 10 – 12).

11.     Espinoza commenced a second lawsuit captioned <u>Stalin Rodrigo Reyes Espinoza v. Ask Electrical Contracting Corp.</u>, filed in the Supreme Court of the State of New York, County of Kings County under Index Number 514760/2022 ("The Second Action"). A copy of the complaint from the Second Action filed by Espinoza is attached hereto as **Exhibit "D"**.

12. The claim in the Second Action is that on June 28, 2019, Espinoza allegedly sustained injuries while working at 217-14 Hempstead Avenue, Queens Village, NY 11429 during the course of his employment with Jim Associates. (Ex. D p. 4 – 5 ¶¶ 18 – 25).

13. Espinoza, in the Second Action, alleged that Ask hired Kalnitech pursuant to a written contract and/or agreement. (Ex. D p. 4 ¶ 17).

14. Espinoza, in the Second Action, alleged that Ask hired Jim Associates pursuant to a written contract and/or agreement. (Ex. D p. 4 ¶ 18).

15. On September 9, 2022, Ask filed an answer and asserted affirmative as well as referenced reservation of rights for crossclaims against others not in that lawsuit. A copy of Ask's Answer is attached hereto as **Exhibit "E"**.

16. Ask's answer indicated that it would assert crossclaims and that it reserved the right to add counterclaims, crossclaims and institute a third-party action at a later date, which in did, by asserting crossclaims against Davs and Kalnitech for indemnification and contribution on January 8, 2024. (Ex. E p. 1, 10).

17. Ask commenced a third-party action in the Second Action, on June 16, 2023, against Jim Associates. A copy of the third-party complaint from the Second Action filed by Ask, with exhibits to that pleading, is attached hereto as **Exhibit "F"**.

18. Ask, in the third-party complaint in the Second Action, asserted claims for contractual indemnification and additional insured coverage pursuant to the July 15, 2019 Jim Associates Master Subcontract Agreement attached as an Exhibit to that pleading. (Ex. F p. 7, 8 – 9, 39 – 48).

19. All of the claims in the First Action and the Second Action pertain to the same action while Espinoza was working for Jim Associates. (Ex. A-F.)

**The Falls Lake Policy and Disclaimers of Coverage**

20.     Falls Lake issued policy number SKP 2004493 10 to Kalnitech Construction Corp. ("Kalnitech") (the "Policy"). See attached hereto as **Exhibit "G"** a redacted copy of the Policy issued by Falls Lake to Kalnitech.

21.     The Policy contained the following additional insured endorsement found on form CG 20 33 04 13:

*     *     *

**ADDITIONAL INSURED – OWNERS, LESSEES OR CONTRACTORS – AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II – Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

**1.** Your acts or omissions; or

**2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

**1.** Only applies to the extent permitted by law; and

**2.** Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

4

   **B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

   This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

    a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b. Supervisory, inspection, architectural or engineering activities.

    This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

                    \*      \*      \*

(Ex. G p.29).

    22.    The Policy also contained the following additional insured endorsement found on form AE 01 49 11 15.

                    \*      \*      \*

   **ADDITIONAL INSURED – OWNERS, LESSEES, OR CONTRACTORS – COMPLETED OPERATIONS – AUTOMATIC STATUS WHEN REQUIRED IN A WRITTEN CONTRACT WITH YOU**

   This endorsement modifies insurance provided under the following:

   COMMERCIAL GENERAL LIABILITY COVERAGE PART

   **A. Section II – Who is An Insured** is amended to include as an additional insured any person or organization when you and such person or organization have agreed in a "written contract" that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or

5

"personal and advertising injury" caused, in whole or in part, by "your work" performed for that additional insured and included in the "products-completed operations hazard".

However, the insurance afforded to such additional insured:

1. Only applies to the extent permitted by law; and
2. Will not be broader than that which you are required by the "written contract" to provide for such additional insured.

B. With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

    a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    b. Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

C. With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits of Insurance:**

The most we will pay on behalf of the additional insured is the amount of insurance.

1. Required by the "written contract" you have entered into with the additional insured; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

6

> This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

> **D.** The following is added to **4. Other Insurance**, part of **SECTION IV – COMMERICAL GENERAL LIABILITY CONDITIONS:**

> If the "written contract" specifically requires that this insurance apply on a primary basis or a primary and non-contributory basis, this insurance is primary to such additional insured.

> **E.** As respects this endorsement only, The following Definition is added to **SECTION V – DEFINITIONS**

> A "written contract" means that part of any written contract under which you are required to include a person or organizations as an additional insured, provided that the "bodily injury", "property damage", or "personal and advertising injury" occurs:

> 1. After the signing and execution of the written contract by you;

> 2. While that part of the written contract is in effect; and

> 3. Before the end of the policy period.

*   *   *

(Ex. G p. 57).

23. The Policy further contained the following injury to employee endorsement found on form SN 0006 0713:

*   *   *

> **EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS**

> This endorsement modifies insurance provided under the following:

> **COMMERCIAL GENERAL LIABILITY COVERAGE PART**

> Exclusion 2.e Employers Liability is deleted and replaced by the following:

> 2.e   Employer's Liability

> This insurance does not apply to:

(1) "Bodily injury" to any "employee" of any insured arising out of or in the course of:

    a. Employment by any insured; or

    b. Performing duties related to the conduct of any insured's business;

(2) "Bodily injury" to any contractor or any "employee" of any contractor arising out of or in the course of the contractor or its employee performing services of any kind or nature whatsoever;

(3) Any alleged obligation of any insured to indemnify or contribute with another because of damages arising out of such "bodily injury" to an insured's employee or any contractor or any contractor's employee;

(4) "Bodily injury" sustained by the spouse, child, parent, brother or sister of any "employee" of any insured, or of a contractor, or any "employee" of any contractor as a consequence of any injury to any person as set forth in paragraph (1) and (2) of this endorsement.

This exclusion applies to all claims and suits by any person or organization for damages because of such "bodily injury," including damages for care and loss of services.

As used herein the definition of "employee" includes a "leased worker" and a "temporary worker."

This exclusion replaces the exclusion relating to "bodily injury to employees and relatives of "employees" contained in the Exclusions Section of the policy to which this endorsement is attached and the definition of "employee" in said policy.

All other terms and conditions remain unchanged.

                                            \*      \*      \*

(Ex. G p.64).

24.     Falls Lake denied coverage to Kalnitech and all parties as to the claims from the Espinoza accident as asserted in both the First and Section Action by letters dated Septeember 3,

8

2019, September 16, 2019, and June 20, 2022 (attached hereto individually as **Exhibit "H, I, and J"**).

25. Falls Lake denied coverage to the named insured, Kalnitech, as well as all parties who may seek coverage under the Policy as an additional insured for the claims asserted by Espinoza and any crossclaims amongst defendants for contribution and indemnification arising from injury to Espinoza as a worker for a contractor performing work for any insured at the premises. (Ex. H, I, J).

26. The September 3, 2019, September 16, 2019, and June 20, 2022 disclaimer letters denied coverage pursuant to the "Exclusion of Injury to Employees, Contractors and Employees of Contractors" provision, which barred coverage as to claims arising from bodily injury to an employee of Kalnitech and/or injury to a contractor or an employee of a contractor working for any insured, including claims by other for contribution and indemnification that resulted from such bodily injury to an employee of any contractor working for any insured. (Ex. H p. 5 – 6, 15, Ex. J p. 4 – 7).

27. The September 3, 2019, September 16, 2019, and June 20, 2022 disclaimer letters referenced the requirements under the "Additional Insured – Owners, Lessees or Contractors – Automatic Status When Required in a Construction Agreement With You" endorsement of the Policy and denied coverage to the extent one did not qualify or the claim was excluded from coverage by such provision. (Ex. H p. 11 – 13, 16 – 17, J p. 23, 26 – 28).

28. The September 3, 2019, September 16, 2019, and June 20, 2022 disclaimer letters referenced the requirements under the "Additional Insured – Owners, Lessees or Contractors – Completed Operations – Automatic Status When Required in a Written Contract With You"

9

endorsement of the Policy and denied coverage to the extent one did not qualify or the claim was excluded from coverage by such provision.  (Ex. H p. 13 – 15, 16 – 17, J p. 24– 28).

29. The June 20, 2022 disclaimer letter specifically noted that Falls Lake was not aware of any claims against Ask until June 2022 and that the same grounds for denial of coverage under the Policy applied to Ask, as well as all others, for the accident and injuries claimed by Espinoza, as well as claims asserted by Ask against other and visa versa, and to the extent that Ask sought coverage under the Policy as an insured. (Ex. J p. 2 – 28).

### This Action And The Evidence That Warrants Summary Judgment

30. Falls Lake, in this declaratory judgment action, seeks, in the amended complaint, relief as to all parties with respect to the denial of coverage under the Policy for all claims asserted in both of the Underlying Actions, but on this motion, Falls Lake seeks a ruling as to the applicability of the "Exclusion of Injury to Employees, Contractors and Employees of Contractors" provision and the two Additional Insured provisions only, without waiving the other grounds for denial of coverage set forth in the several disclaimer letters issued by Falls Lake and the amended complaint.  A copy of the amended complaint is attached hereto as **Exhibit "K"** (see also Ex. H, I, J, K); see also Docket #1 for the original complaint filed against Davs, Espinoza, and Kalnitech.

31. The claims asserted in the Underlying Actions all arise from work performed pursuant to the "Short Form Prime Contract Between Owner & Contractor" ("Prime Contract") entered into on or about March 11, 2019, by General Contractor, ASK Electrical Corp. ("Ask") and the Owner, DAVS Partners LLC ("DAVS"), for the project known as 217-14 Hempstead Avenue, Queens Village, NY 11429. See attached hereto as **Exhibit "L"** a copy of the Prime Contract that was included and authenticated as Exhibit A of DAVS' and Ask's Supplemental Response to Plaintiff's First Set of Requests for Documents and Other Disclosure in this action,

which is also attached hereto part of this Exhibit. See also attached hereto as **Appendix Exhibit "1"** a copy of David Kleeman's deposition transcript, on behalf of Davs and a principal of both Davs and Ask, wherein the Prime Contract was authenticated. (Ex. 1 p. 61).

32. The Prime Contract, on page 1, refers to Ask as the contractor. (Ex. L p. 1).

33. The Prime Contract also refers to DAVS as the owner. (Ex. L p.1).

34. The Prime Contract provides that the work to be performed was a complete renovation and buildout at the premises. (Ex. L p. 1).

35. The project was identified in the Prime Contract as 217-14 Hempstead Avenue, Queens Village, NY 11429 and it was specified that it involved the renovation of the premises and the fitting-out of the premises to construct offices. (Ex. 1 p. 38).

36. The Prime Contract sets forth terms for the contractor, Ask, to name DAVS and its agents as additional insureds under Ask's policy of insurance. (Ex. L p.5).

37. Section 14 of the Prime Contract, entitled Insurance Requirements, stated the following:

\* \* \*

> The owner and their agents are to be named as an additional insured on a primary and non-contributory basis to the Contractor's Commercial General Liability and Umbrella policies using appropriate ISO forms that include Broad Form Contractual Liability, Premises Operations Liability, Contractual Liability, Advertising and Personal Injury Liability and Products/Completed Operations Liability, or by using a company specific endorsement that provides equivalent protection. Subcontractor's Commercial General Liability and Umbrella policies will not have any 3rd Part Action Over Exclusions or Employee Injury Exclusions.

\* \* \*

(Ex. L p. 5).

38. The claims asserted in the Underlying Actions all arise from work performed pursuant to the March 12, 2019, contract between General Contractor, Ask, and Kalnitech

11

("Kalnitech Master Subcontract.") See attached hereto as **Exhibit "M,"** a copy of the Kalnitech Master Subcontract (Ex M p.8-15) that was included and authenticated in Exhibit A of DAVS' and Ask's Supplemental Response to Plaintiff's First Set of Requests for Documents and Other Disclosure, which is also attached hereto as part of this Exhibits. In addition, see attached hereto as **Exhibit "N"** a copy of Ask's responses to demands in the Second Action which included and authenticated Ask's subcontract agreement between Kalnitech and Ask's subcontract agreement between Jim Associates. (Ex. N). See also attached hereto as **Appendix Exhibit "2"** a copy of Kostas "Gus" Stoupakis' deposition transcript, on behalf of Kalnitech, wherein the Kalnitech Master Subcontract was authenticated at deposition in the Underlying Actions. (Ex. 2 p. 15, 16, 55 – 56); (Ex. 1 p. 32, 34, 74).

39. The Kalnitech Master Subcontract defined Ask as the contractor. (Ex. M p.8).

40. The Kalnitech Master Subcontract defined Kalnitech as the subcontractor. (Ex. M p.8).

41. In the Kalnitech Master Subcontract, Kalnitech assumed all obligations, risks and responsibilities that were assumed by Ask in its contract withs DAVS. (Ex. M p.8).

42. Section 2 of the Kalnitech Master Subcontract Agreement, entitled Subcontractor's Work, stated the following:

*   *   *

> With respect to the Work covered by this Subcontract and any individual Work Order, and except as expressly modified herein, Subcontractor shall have all rights which Contractor has under the Contract Documents, and Subcontractor shall assume all obligations, risks and responsibilities which Contractor has assumed towards the Owner and third parties as applicable in the Contract Documents, and Subcontractor shall be bound to Contractor in the same manner and to the same extent that Contractor is bound to the Owner or said third parties. In case of a conflict between this Subcontract Agreement and the Contract Documents as incorporated herein, pursuant to each Work Order, the terms of the Work Order Shall prevail.

\* \* \*

(Ex. M p. 8).

43. The Kalnitech Master Subcontract also sets forth terms for Kalnitech to name DAVS, Ask, and their agents as additional insureds on its policy of insurance. (Ex. M p.9); (Ex. 2 p. 60).

44. Section 4 of the Kalnitech Master Subcontract Agreement, entitled Subcontractor's Insurance, stated the following:

\* \* \*

> 6. Subcontractors General Liability policy shall be endorsed to include Blanket Additional Insured Endorsements CG2033 7/04 and CG2037 7/04 or acceptable equivalent forms. Subcontractor is required to include as additional insureds: the Owner, the Contractor and any other additional insured in the Owner/Contractor Agreement for ongoing work and completed operations; the additional insured coverage is on a primary and non-contributory basis. The Contractor's policy is excess of the Subcontractor's Insurance and the Contractor's insurance shall not be called upon to contribute to the Subcontractor's Insurance.

\* \* \*

(Ex. M. p. 9)

45. Section 4 of the Kalnitech Master Subcontract Agreement, entitled Subcontractor's Insurance, also stated the following:

\* \* \*

> Certificates of Insurance shall, without liability on the part of the **Owner** and/or **Contractor** for premiums therefor, include Additional Insured endorsements for ongoing operations and complete operations of the **Subcontractor**, as required by written contract, to include the **Contractor**, **Owner** and all parties required by the **Owner/Contractor Agreement**. Any contractor using General Liability policies issued by an insurer on the list of carriers in **Exhibit B** will be required to produce a copy of their General Liability policy for review and approval prior to beginning any work. The certificate must follow the format of the sample certificate in

13

> **Exhibit C**. Exhibit D lists carriers providing acceptable General Liability policies for operations in NY with exceptions regarding their acceptability for certain work.
>
> \*    \*    \*

(Ex. M p. 10).

46. The claims asserted in the Underlying Actions all arise from injuries as a result of an accident claimed by Espinoza while he was employed by Jim Associates Corp., working on the premises. See attached hereto as **Exhibit "O"** a copy of Espinoza's Response to Plaintiff's First Set of Requests and Other Disclosure, a copy Espinoza's Additional Disclosure, and a copy of Espinoza's Bill of Particulars from the underlying actions. (Ex. O p. 5 ¶ 4, p. 20 ¶ 11). Also, attached hereto as **Appendix Exhibit "3 and 4"** is a copy of Espinoza's, the underlying plaintiff, deposition transcript. (Ex 3 p. 58; Ex. 4 p. 102); see also (Ex. 2 p. 41).

47. Jim Associates Corp. performed work at the premises pursuant to its contract with Ask, referenced here as the "Jim Associates Master Subcontract Agreement". See attached hereto as **Exhibit "P"** a copy of the Jim Associates Master Subcontract Agreement that was included in Exhibit A of DAVS' and Ask's Supplemental Response to Plaintiff's First Set of Requests for Documents and Other Disclosure, which is also attached hereto.

48. The Jim Associates Master Subcontract designated Ask as the contractor for the work described. (Ex. P p.8).

49. The Jim Associates Master Subcontract designated Jim Associates as the subcontractor for the work described. (Ex. P. p.8).

50. Under the Jim Associates Master Subcontract, Jim Associates assumed all obligations, risks and responsibilities that were assumed by Ask in its contract withs DAVS. (Ex. P p.8).

51. Jim Associates submitted several invoices and/or proposals to Ask and Gus, the principal of Kalnitech, for work at the premises, dated May 27, 2019 (Ex. R p. 17), June 12, 2019 (Ex. R p. 19), June 26, 2019 (Ex. R p.15), July 18, 2019 (Ex. Q p.6), and September 3, 2019 (Ex. Q p.26). See attached hereto as **Exhibit "Q"** and **Exhibit "R"**, respectively, a copy of Jim Associate's documents produced via subpoena and a copy of Jim Associate's documents that were produced as Exhibit B of DAVS' and Ask's initial Response to Plaintiff's First Set of Requests for Documents and Other Disclosure in the Second Action, which authenticated said documents, also are attached hereto as part of said Exhibits.

52. Either Gus from Kalnitech was the general contractor and/or Ask was the general contractor for the work performed at the premises, including the work claimed to have been performed by Espinoza at the time of his accident/injuries. See attached hereto as **Appendix Exhibit "5"** a copy of Dwayne Hudson's, on behalf of Davs, deposition transcript. (Ex. 5 p. 15, 20); (Ex. 1 p. 32, 44, 46, 76); (Ex. 2 p. 19).

53. Kalnitech and Ask each hired subcontractors for the project. (Ex. 1 p. 103 – 105, 129) (Ex. 2 p.27, 28, 49).

54. Kalnitech and its subcontractors performed demo work, concrete work, painting, waterproofing, and roof patch work. (Ex. 2. p. 28).

55. Ask hired subcontractors to perform plumbing, mechanical, HVAC, electrical, roofing, and fence work. (Ex. 1 p. 103 – 105, 129); (Ex. 2 p. 32).

56. Both Kalnitech, and David Kleeman, the principal of DAVS and Ask, had a prior relationship with Jim Associates prior to Jim working at the premises. (Ex. 1 p. 107); (Ex. 2 p. 36, 41).

57. Ask hired Jim Associates. (Ex. 1 p.32, 34); (Ex. 2 p. 33 – 34, 41, 57, 58).

58. Jim Associates was hired to perform interior finishing work. (Ex. 1 p. 107); (Ex. 2 p. 33).

59. Ask paid Jim Associates for the work performed at the premises. (Ex. 1 p. 107 – 108).

60. All work performed at the premises was scheduled and supervised by Gus and Kalnitech. (Ex. 1 p 127, 130, 146, 148).

61. The Falls Lake policy's "Exclusion – Injury to Employees, Contractors and Employees of Contractors" endorsement bars coverage to all claims pertaining to Espinoza's alleged injury as an employee of a contractor for any insured in that Espinoza alleges that he was injured in the course of his employment with Jim Associates, a subcontractor retained by either Ask and/or Kalnitech, and the endorsement bars coverage even if Davs and Ask prove the requirements for status as an additional insured under the Additional Insured endorsements of the Policy, as well as applies to the claims asserted amongst Davs, Ask, and/or Kalnitech for indemnity and contribution because of bodily injury to any contractor or any contractor's employee working for any insured. (Ex. G p.64).

Dated: Mineola, New York
       February 12, 2024

                         MIRANDA SLONE SKLARIN VERVENIOTIS LLP
                         **Attorneys for Plaintiff**
                         **FALLS LAKE NATIONAL INSURANCE COMPANY**

                         s/Steven Verveniotis

                         Steven Verveniotis, Esq.
                         240 Mineola Boulevard
                         Mineola, New York 11501
                         P (516) 741-7676
                         F (516) 741-9060
                         Our File No.: 19-208