UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
FALLS LAKE NATIONAL INSURANCE COMPANY,

                              Plaintiff,

      -against-

KALNITECH CONSTRUCTION CORP.,
DAVS PARTNERS LLC, STALIN RODRIGO
REYES ESPINOZA and ASK ELECTRICAL
CONTRACTING CORP.,

                              Defendants.
-------------------------------------------------------------X

Case No. 1:22-cv-1473
(KAM)(PK)

**DEFENDANTS DAVS
PARTNERS and ASK
ELECTRICAL
CONTRACTING CORP.'S
RESPONSE TO
PLAINTIFF'S C.P.L.R 56.1
STATEMENT OF
<u>MATERIAL FACTS</u>**

LYNSAY A. DYSZLER, declares as follows, pursuant to 28 U.S.C. §1746:

I am a member of the law firm of Milber Makris Plousadis & Seiden, LLP attorneys of record for the Defendants DAVS PARTNERS LLC and ASK ELECTRICAL CONTRACTING CORP. (hereinafter referred to as "DAVS" and "ASK," respectively and collectively as the "Responding Defendants") and as such am thoroughly conversant with the facts and circumstances herein based upon the contents of the file maintained by this office.

In accordance with Rule 56.1 of the Local Court Rules for the United States District Court, Eastern District of New York, the Responding Defendants submit their Response to Plaintiff, FALLS LAKE NATIONAL INSURANCE COMPANY's ("FALLS LAKE") Rule 56.1 Statement of Material Facts dated February 12, 2024:

<u>**"The Underlying Actions, Including Crossclaims Between Defendants"**</u>

1.      "Stalin Rodrigo Reyes Espinoza ("Espinoza") commenced the lawsuit captioned <u>Stalin Rodrigo Reyes Espinoza v. Davs Partners LLC and Kalnitech Construction Company</u>, filed in the Supreme Court of the State of New York, County of Kings, under Index Number

515197/2019 (the "First Action"). A copy of the complaint from the First Action filed by Espinoza as well as documents sent to the insurer are attached hereto as **Exhibit "A."**

**RESPONSE:** Admit and respectfully refer to Exhibit "A" for its true and accurate content as to any documents sent to the insurer.

2.      "Espinoza claims, in the First Action, that on June 28, 2019, he sustained injuries while working at 217-14 Hempstead Avenue, Queens Village, NY 11429 (the "premises") as an employee of Jim Associates which had contracted with others to perform construction/renovation work at the premises. (Ex. A p. 7-7 ¶¶ 25, 26, 31)."

**RESPONSE:** Denies that the Complaint in the action of *Stalin Rodrigo Reyes Espinoza v. Davs Partners LLC and Kalnitech Construction Company*, filed in the Supreme Court of the State of New York, County of Kings under Index Number 515197/2019 (the "First Action"), alleges that Espinoza was injured during the course of his employment with Jim Associates (see Exhibit "A" at ¶¶ 25, 26, 31), but admits that said injury is alleged to have occurred at the premises located at 217-14 Hempstead Avenue, Queens, New York. *See generally,* Exhibit "A."

3.      "Espinoza, in the First Action, alleged that Davs and/or Kalnitech hired Jim Associates pursuant to a written contract and/or agreement to perform work at the premises. (Ex. A p. 6 ¶ 24, p. 9 ¶ 46)."

**RESPONSE:** Admit that Espinoza alleged in the First Action that Davs and/or Kalnitech hired Jim Associates pursuant to a written contract and/or agreement, but deny the paragraphs cited by Plaintiff (see Exhibit "A" p. 6 ¶ 24, p. 9 ¶ 46) stand for what they were cited for.

4.      "On October 21, 2019, Davs filed an answer and asserted affirmative defenses and crossclaims against Kalnitech for recovery from same to the extent that Davs is held liable to Espinoza for his claims against Davs. A copy of Davs' Answer is attached hereto as **Exhibit "B"**."

**RESPONSE:** Admitted.

5.      "Davs admitted in its answer that it hired and/or retained Kalnitech pursuant to a written contract agreement to perform work at the premises. (Ex. B p. 3 ¶ 13, 19)."

**RESPONSE:** Admitted.

6.      "Davs asserted crossclaims against Kalnitech for contractual and common law indemnification and contribution to the extent that Davs is held liable to Espinoza for his claims against Davs. (Ex. B p. 8-10)."

**RESPONSE:** Admitted.

7.      "On November 4, 2019, Kalnitech filed an answer and asserted affirmative defenses and cross claims against Davs. A copy of Kalnitech's Answer is attached hereto as **Exhibit "C"**."

**RESPONSE:** Admitted.

8.      "Kalnitech denied that it contracted with Davs. (Ex. C p. 2 ¶ 6)."

**RESPONSE:** Admitted.

9.      "Kalnitech admitted, in the First Action, that it was hired to perform construction work at the premises. (Ex. C. p. 3 ¶ 10)."

**RESPONSE:** Admitted.

10.      "Kalnitech asserted crossclaims against Davs for contractual and common law indemnification, contribution, and insurance coverage to the extent that Kalnitech is held liable to Espinoza for his claims against Kalnitech. (Ex. C p. 10-12)."

**RESPONSE:** Admitted.

11.      "Espinoza commenced a second lawsuit captioned Stalin Rodrigo Reyes Espinoza v. Ask Electrical Contracting Corp., filed in the Supreme Court of the State of New York, County

of Kings, under Index Number 514760/2022 (The "Second Action"). A copy of the complaint from the Second Action filed by Espinoza is attached hereto as **Exhibit "D".**"

**RESPONSE:** Admit and respectfully refer to Exhibit "D" for its true and accurate content. *See generally*, Exhibit "D."

12.      "The claim in the Second Action is that on June 28, 2019, Espinoza allegedly sustained injuries while working at 217-14 Hempstead Avenue, Queens Village, NY 11429 during the course of his employment with Jim Associates. (Ex. D p. 4-5 ¶¶ 18-25)."

**RESPONSE:** Denies that the Complaint in the Second Action alleges that Espinoza was injured during the course of his employment with Jim Associates (see Exhibit "D" p. 4-5 ¶¶ 18-25), but admits that said injury is alleged to have occurred at the premises located at 217-14 Hempstead Avenue, Queens, New York. *See generally,* Exhibit "D."

13.      "Espinoza, in the Second Action, alleged that Ask hired Kalnitech pursuant to a written contract and/or agreement. (Ex. D p. 4 ¶ 17)."

**RESPONSE:** Admitted.

14.      "Espinoza, in the Second Action, alleged that Ask hired Jim Associates pursuant to a written contract and/or agreement. (Ex. D p. 4 ¶ 18)."

**RESPONSE:** Admitted.

15.      "On September 9, 2022, Ask filed an answer and asserted affirmative as well as referenced reservation of rights for crossclaims against others not in that lawsuit. A copy of Ask's Answer is attached hereto as Exhibit "E"."

**RESPONSE:** Admitted.

16.      "Ask's answer identified that it would assert crossclaims and that it reserved the right to add counterclaims, crossclaims and institute a third-party action at a later date, which it

4

did, by asserting crossclaims against Davs and Kalnitech for indemnification and contribution on January 8, 2024. (Ex. E p. 1, 10)."

**RESPONSE:** Admitted.

17.    "Ask commenced a third-party action in the Second Action, on June 16, 2023, against Jim Associates. A copy of the third-party complaint from the Second Action filed by Ask, with exhibits to that pleading, is attached hereto as **Exhibit "F"**."

**RESPONSE:** Admitted.

18.    "Ask, in the third-party complaint in the Second Action, asserted claims for contractual indemnification and additional insured coverage pursuant to the July 15, 2019 Jim Associates Master Subcontract Agreement attached as an Exhibit to that pleading. (Ex. F p. 7, 8-9, 39-48)."

**RESPONSE:** Admitted and respectfully refers to the Jim Associates Master Subcontract Agreement for its complete terms and conditions. *See* Exhibit "F."

19.    "All of the claims in the First Action and the Second Action pertain to the same action while Espinoza was working for Jim Associates. (Ex. A-F)."

**RESPONSE:** Admit that the claims in the First Action and Second Action pertain to the same action but deny as the word "working" is undefined and respectfully refer to the underlying pleadings for the complete context of what was being asked of the respective witnesses.

### "The Falls Lake Policy and Disclaimers of Coverage"

20.    "Falls Lake issued policy number SKP 2004493 10 to Kalnitech Construction Corp. ("Kalnitech") (the "Policy"). See attached hereto as **Exhibit "G"** a redacted copy of the Policy issued by Falls Lake to Kalnitech."

**RESPONSE:** Admitted and respectfully refers to the Falls Lake Policy for its complete terms and conditions.

21.    "The Policy contained the following additional insured endorsement found on form

CG 20 33 04 13:

**ADDITIONAL INSURED- OWNERS, LESSEES OR CONTRACTORS- AUTOMATIC STATUS WHEN REQUIRED IN CONSTRUCTION AGREEMENT WITH YOU**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.   Section II - Who Is An Insured** is amended to include as an additional insured any person or organization for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

1.   Your acts or omissions; or

2.   The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured.

However, the insurance afforded to such additional insured:

1.   Only applies to the extent permitted by law; and

2.   Will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

A person's or organization's status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising

6

injury" arising out of the rendering of, or the failure to render, any professional architectural, engineering or surveying services, including:

a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

b. Supervisory, inspection, architectural or engineering activities.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

\*       \*       \*

(Ex. G p.29)."

**RESPONSE:** Admit the existence of the additional insured endorsement and respectfully refer to the Falls Lake Policy for its complete terms and conditions.

22.   "The Policy also contained the following additional insured endorsement found on form AE 01 49 11 15.

\*       \*       \*

**ADDITIONAL INSURED- OWNERS, LESSEES, OR CONTRACTORS- COMPLETED OPERATIONS- AUTOMATIC STATUS WHEN REQUIRED IN A WRITTEN CONTRACT WITH YOU**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A. Section II- Who is An Insured** is amended to include as an additional insured any person or organization when you and such person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury," "property damage" or "personal and advertising injury" caused, in whole

7

or in part, by: "your work" performed for that additional insured and included in the "products-completed operations hazard."

However, the insurance afforded to such additional insured:

1. Only applies to the extent permitted by law; and
2. Will not be broader than that which you are required by the "written contract" to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following additional exclusions apply:

This insurance does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" arising out of, or the failure to render, any professional architectural, engineering or surveying services, including:

   a. The preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

   b. Supervisory, inspection, architectural or engineering activities.

   This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by any insured, if the "occurrence" which caused the "bodily injury" or "property damage", or the offense which caused the "personal and advertising injury", involved the rendering of or the failure to render any professional architectural, engineering or surveying services.

**C.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III Limits of Insurance**:

The most we will pay on behalf of the additional insured is the amount of insurance.

1. Required by the "written contract" you have entered into with the additional insured; or
2. Available under the applicable Limits of Insurance shown in the Declarations;

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

**D.** The following is added to **4. Other Insurance,** part of **SECTION IV- COMMERICAL GENERAL LIABILITY CONDITIONS**:

If the "written contract" specifically requires that this insurance apply on a primary basis or a primary and non-contributory basis, this insurance is primary to such additional insured.

**E.** As respects this endorsement only, The following Definition is added to **SECTION V- DEFINITIONS**

A "written contract" means that part of any written contract under which you are required to include a person or organizations as an additional insured, provided that the "bodily injury", "property damage" or "personal and advertising injury" occurs:

1. After the signing and execution of the written contract by you;

2. While that part of the written contract is in effect; and

3. Before the end of the policy period.

*          *          *

(Ex. G p. 57)."

**RESPONSE:** Admit the existence of the additional insured endorsement and respectfully refer to the Falls Lake Policy for its complete terms and conditions.

23.    "The Policy further contained the following injury to employee endorsement found on form SN 0006 0713:

*          *          *

**EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Exclusion 2.e Employers Liability is deleted and replaced by the following:
2.e Employer's Liability

This insurance does not apply to:

(1) "Bodily injury" to any "employee" of any insured arising out of or in the course of:

    a. Employment by any insured; or

    b. Performing duties related to the conduct of any insured's business;

(2) "Bodily injury" to any contractor or any "employee" of any contractor arising our of or in the course of the contractor or its employee performing services of any kind or nature whatsoever;

(3) Any alleged obligation of any insured to indemnify or contribute with another because of damages arising out of such "bodily injury" to an insured's employee or any contractor or any contractor's employee;

(4) "Bodily injury" sustained by the spouse, child, parent, brother or sister of any "employee" of any insured, or of a contractor, or any "employee" of any contractor as a consequence of any injury to any person as set forth in paragraph (1) and (2) of this endorsement.

This exclusion applies to all claims and suits by any person or organization for damages because of such "bodily injury," including damages for care and loss of services.

As used herein the definition of "employee" includes a "leased worker" and a "temporary worker."

This exclusion replaces the exclusion relating to "bodily injury" to employees and relatives of "employees" contained in the Exclusions Section of the policy to which this Endorsement is attached and the definition of "employee" in said policy.

All other terms and conditions remain unchanged.

\*     \*     \*

(Ex. G p.64)."

**RESPONSE:** Admit the existence of the endorsement and respectfully refer to the Falls Lake Policy for its complete terms and conditions.

24.      "Falls Lake denied coverage to Kalnitech and all parties as to the claims from the Espinoza accident as asserted in both the First and Second Action by letters dated September 3, 2019, September 16, 2019 and June 20, 2022 (attached hereto individually as **Exhibit "H, I, and J"**)."

**RESPONSE:** Admitted and refer to the September 3, 2019, September 16, 2019, and June 20, 2022 letters issued by counsel for Falls Lake for their true and accurate content. *See generally,* Exhibits "H", "I," and "J."

25.      "Falls Lake denied coverage to the named insured, Kalnitech, as well as all parties who may seek coverage under the Policy as an additional insured for the claims asserted by Espinoza and any crossclaims amongst defendants for contribution and indemnification arising from injury to Espinoza as a worker for a contractor performing work for any insured at the premises. (Ex. H, I, J)."

**RESPONSE:** Admit and refer to the September 3, 2019, September 16, 2019, and June 20, 2022 letters issued by counsel for Falls Lake for their true and accurate content. *See generally,* Exhibits "H", "I," and "J."

26.      "The September 3, 2019, September 16, 2019 and June 20, 2022 disclaimer letters denied coverage pursuant to the "Exclusion of Injury to Employees, Contractors and Employees of Contractors" provision, which barred coverage as to claims arising from bodily injury to an employee of Kalnitech and/or injury to a contractor or an employee of a contractor working for any insured, including claims by other for contribution and indemnification that resulted from such

bodily injury to an employee of any contractor working for any insured. (Ex. H p. 5-6, 15, Ex. J p. 4-7)."

**RESPONSE:** Admit that the "Exclusion of Injury to Employees, Contractors and Employees of Contractors" provision is referenced in the September 3, 2019, September 16, 2019 and June 20, 2022 disclaimer letters, but deny that it bars coverage as to claims arising from bodily injury to an employee of Kalnitech and/or to a contractor or an employee of a contractor working for any insured, including claims by others for contribution and indemnification that resulted from such bodily injury to an employee of any contractor working for any insured.

27.     "The September 3, 2019, September 16, 2019 and June 20, 2022 disclaimer letters referenced the requirements under the "Additional Insured- Owner, Lessees or Contractors- Automatic Status When Required in a Construction Agreement With You" endorsement of the Policy and denied coverage to the extent one did not qualify or the claim was excluded from coverage by such provision. (Ex. H p. 11-13, 16-17, J p. 23, 26-28)."

**RESPONSE:** Admit that the aforementioned disclaimer letters referenced the "Additional Insured- Owner, Lessees or Contractors- Automatic Status When Required in a Construction Agreement With You" endorsement of the Policy and denied coverage, and respectfully refer to the September 3, 2019, September 16, 2019, and June 20, 2022 letters issued by counsel for Falls Lake for their true and accurate content. *See generally,* Exhibits "H", "I," and "J.".

28.     "The September 3, 2019, September 16, 2019 and June 20, 2022 disclaimer letters referenced the requirements under the "Additional Insured- Owner, Lessees or Contractors- Completed Operations- Automatic Status When Required in a Construction Agreement With You" endorsement of the Policy and denied coverage to the extent one did not qualify or the claim was excluded from coverage by such provision. (Ex. H p. 13-15, 16-17, J p. 24-28)."

**RESPONSE:** Admit that the aforementioned disclaimer letters referenced the "Additional Insured- Owner, Lessees or Contractors- Completed Operations- Automatic Status When Required in a Construction Agreement With You" endorsement of the Policy and denied coverage, and respectfully refer to the September 3, 2019, September 16, 2019, and June 20, 2022 letters issued by counsel for Falls Lake for their true and accurate content. *See generally,* Exhibits "H", "I," and "J."

29.    "The June 20, 2022 disclaimer letter specifically noted that Falls Lake was not aware of any claims against Ask until June 2022 and that the same grounds for denial of coverage under the Policy applied to Ask, as well as others, for the accident and injuries claimed by Espinoza, as well as claims asserted by Ask against others and vice versa, and to the extent that Ask sought coverage under the Policy as an insured. (Ex. J p. 2-28)."

**RESPONSE:** Deny and refer to the specific language cited within the June 20, 2022 letter issued by counsel for Falls Lake for its true and accurate content. *See generally,* Exhibit "J."

**"This Action and the Evidence That Warrants Summary Judgment"**

30.    "Falls Lake, in this declaratory judgment action, seeks, in the amended complaint, relief as to all parties with respect to the denial of coverage under the Policy for all claims asserted in both the Underlying Actions, but on this motion, Falls Lake seeks a ruling as to the applicability of the "Exclusion of Injury to Employees, Contractors and Employees of Contractors" provision and the two Additional Insured provisions only, without waiting the other grounds for denial of coverage set forth in the several disclaimer letters issued by Falls Lake and the amended complaint. A copy of the amended complaint is attached hereto as **Exhibit "K"** (see also Ex. H, I, J, K); see also Docket #1 for the original complaint filed against Davs, Espinoza, and Kalnitech."

**RESPONSE:** Admit that Falls Lake seeks a ruling as to the applicability of the "Exclusion of Injury to Employees, Contractors and Employees of Contractors" provision and two Additional

Insured provisions, and respectfully refer to the Amended Complaint for its true and accurate allegations. *See generally*, Exhibit "K."

31.     "The claims asserted in the Underlying Actions all arise from work performed pursuant to the "Short Form Prime Contract Between Owner & Contractor" ("Prime Contract") entered into on or about March 11, 2019, by General Contractor, ASK Electrical Corp. ("Ask") and the Owner, DAVS Partners, LLC ("Davs"), for the project known as 217-14 Hempstead Avenue, Queens Village, NY 11429. See attached hereto as **Exhibit "L"** a copy of the Prime Contract that was included and authenticated as Exhibit A of DAVS' and Ask's Supplemental Response to Plaintiff's First Set of Requests for Documents and Other Disclosure in this action, which is also attached hereto part of this Exhibit. See also attached hereto as **Appendix Exhibit "1"** a copy of David Kleeman's deposition transcript, on behalf of Davs and a principal of both Davs and Ask, wherein the Prime Contract was authenticated. (Ex. 1 p. 61)."

**RESPONSE:** Admitted and respectfully refers to the Prime Contract for its complete terms and conditions. *See* Exhibit "L".

32.     "The Prime Contract, on page 1, refers to Ask as the contractor. (Ex. L p. 1)."

**RESPONSE:** Admitted and respectfully refers to the Prime Contract for its complete terms and conditions. *See* Exhibit "L".

33.     "The Prime Contract also refers to DAVS as the owner. (Ex. L p. 1)."

**RESPONSE:** Admitted and respectfully refers to the Prime Contract for its complete terms and conditions. *See* Exhibit "L".

34.     "The Prime Contract provides that the work to be performed was a complete renovation and buildout at the premises. (Ex. L p. 1)."

14

**RESPONSE:** Admitted and respectfully refers to the Prime Contract for its complete terms and conditions. *See* Exhibit "L".

35.     "The project was identified in the Prime Contract as 217-14 Hempstead Avenue, Queens Village, NY 11429 and it was specified that it involved the renovation of the premises and the fitting-out of the premises to construct offices. (Ex. 1 p. 38)."

**RESPONSE:** Admit that the project was identified in the Prime Contract as 217-14 Hempstead Avenue, Queens Village, NY 11429, but denies that the Prime Contract specified the fitting out of the premises to construct offices. The Responding Defendants otherwise refer to the Prime Contract for its complete terms and conditions. *See* Exhibit "L".

36.     "The Prime Contract sets forth terms for the contractor, Ask, to name DAVS and its agents as additional insureds under Ask's policy of insurance. (Ex. L p. 5)."

**RESPONSE:** Admitted and respectfully refers to the Prime Contract for its complete terms and conditions. *See* Exhibit "L".

37.     "Section 14 of the Prime Contract, entitled Insurance Requirements, stated the following:

*          *          *

> The owner and their agents are to be named as an additional insured on a primary and non-contributory basis to the Contractor's Commercial General Liability and Umbrella policies using appropriate ISO forms that include Broad Form Contractual Liability, Premises Operations Liability, Contractual Liability, Advertising and Personal Injury Liability and Products/Completed Operations Liability, or by using a company specific endorsement that provides equivalent protection. Subcontractor's Commercial General Liability and Umbrella policies will not have any 3rd Part Action Over Exclusions or Employee Injury Exclusions.

* * *

(Ex. L p. 5)."

**RESPONSE:** Admitted and respectfully refers to the Prime Contract for its complete terms and conditions. *See* Exhibit "L".

38.     "The claims asserted in the Underlying Actions all arise from work performed pursuant to the March 12, 2019 contract between General Contractor, Ask, and Kalnitech ("Kalnitech Master Subcontract."). See attached hereto as **Exhibit "M"**, a copy of the Kalnitech Master Subcontract (Ex M p. 8-15) that was included and authenticated in Exhibit A of DAVS' and Ask's Supplemental Response to Plaintiff's First Set of Requests for Documents and Other Disclosure, which is also attached hereto as part of this Exhibit. In addition, see attached hereto as **Exhibit "N"** a copy of Ask's responses to demands in the Second Action which included and authenticated Ask's subcontract agreement between Kalnitech and Ask's subcontract agreement between Jim Associates. (Ex. N). See also attached hereto as **Appendix Exhibit "2"** a copy of Kostas "Gus" Stoupakis' deposition transcript, on behalf of Kaknitech, wherein the Kalnitech Master Subcontract was authenticated at deposition in the Underlying Actions. (Ex. 2 p. 15, 16, 55-56); (Ex. 1 p. 32, 34, 74)."

**RESPONSE:** Admit only that the Kalnitech Master Subcontract is referred to as Exhibit "M", Ask's Supplemental Response to Plaintiff's First Set of Requests for Documents and Other Disclosure is annexed as Exhibit "N", and portions of the deposition transcript of Kostas "Gus" Stoupakis is annexed as Appendix Exhibit "2."

39.     "The Kalnitech Master Subcontract defined Ask as the contractor. (Ex. M p.8)."

**RESPONSE:** Admitted and respectfully refers to the Kalnitech Master Subcontract for its complete terms and conditions. *See* Exhibit "M".

40.     "The Kalnitech Master Subcontract defined Kalnitech as the subcontractor. (Ex. M p. 8)."

**RESPONSE:** Admitted and respectfully refers to the Kalnitech Master Subcontract for its complete terms and conditions. *See* Exhibit "M".

41.   "In the Kalnitech Master Subcontract, Kalnitech assumed all obligations, risks and responsibilities that were assumed by Ask in its contract with DAVS. (Ex. M p. 8)."

**RESPONSE:** Admitted and respectfully refers to the Kalnitech Master Subcontract for its complete terms and conditions. *See* Exhibit "M".

42.   "Section 2 of the Kalnitech Master Subcontract Agreement, entitled Subcontractor's Work, stated the following:

\*       \*       \*

> With respect to the Work covered by this Subcontract and any individual Work Order, and except as expressly modified herein, Subcontractor shall have all rights which Contractor has under the Contract Documents, and Subcontractor shall assume all obligations, risks and responsibilities which Contractor has assumed towards the Owner and third parties as applicable in the Contract Documents, and Subcontractor shall be bound to Contractor in the same manner and to the same extent that Contractor is bound to the Owner or said third parties. In case of a conflict between this Subcontract Agreement and the Contract Documents as incorporated herein, pursuant to each Work Order, the terms of the Work Order Shall prevail.

\*       \*       \*

(Ex. M p 8)."

**RESPONSE:** Admitted and respectfully refers to the Kalnitech Master Subcontract for its complete terms and conditions. *See* Exhibit "M".

43.   "The Kalnitech Master Subcontract also sets forth terms for Kalnitech to name DAVS, Ask and their agents as additional insureds on its policy of insurance. (Ex. M p. 9); (Ex. 2 p 60)."

**RESPONSE:** Admitted and respectfully refers to the Kalnitech Master Subcontract for its complete terms and conditions. *See* Exhibit "M".

44.     "Section 4 of the Kalnitech Master Subcontract Agreement, entitled Subcontractor's Insurance, stated the following:

\*          \*          \*

> Subcontractors General Liability policy shall be endorsed to include Blanket Additional Insured Endorsements CG2033 7/04 and CG2037 7/04 or acceptable equivalent forms. Subcontractor is required to include as additional insureds: the Owner, the Contractor and any other additional insured in the Owner/Contractor Agreement for ongoing work and completed operations; the additional insured coverage is on a primary and non-contributory basis. The Contractor's policy is excess of the Subcontractor's Insurance and the Contractor's insurance shall not be called upon to contribute to the Subcontractor's Insurance.

\*          \*          \*

(Ex. M p. 9)."

**RESPONSE:** Admitted and respectfully refers to the Kalnitech Master Subcontract for its complete terms and conditions. *See* Exhibit "M".

45.     "Section 4 of the Kalnitech Master Subcontract Agreement, entitled Subcontractor's Insurance, also stated the following:

\*          \*          \*

> <u>Certificates of Insurance</u> shall, without liability on the part of the **Owner** and/or **Contractor** for premiums therefor, include Additional Insured endorsements for ongoing operations and complete operations of the **Subcontractor**, as required by written contract, to include the **Contractor**, Owner and all parties required by the **Owner/Contractor Agreement**. Any contractor using General Liability policies issued by an insurer on the list of carriers in **Exhibit B** will be required to produce a copy of their General Liability policy for review and approval prior to beginning any work. The certificate must follow the format of the sample certificate in **Exhibit C**. Exhibit D lists carriers providing acceptable

General Liability policies for operations in NY with exceptions regarding their acceptability for certain work.

*      *      *

(Ex. M p. 10)."

**RESPONSE:** Admitted and respectfully refers to the Kalnitech Master Subcontract for its complete terms and conditions. *See* Exhibit "M".

46.     "The claims asserted in the Underlying Actions all arise from injuries as a result of an accident claimed by Espinoza while he was employed by Jim Associates Corp., working on the premises. See attached hereto as **Exhibit "O"** a copy of Espinoza's Response to Plaintiff's First Set of Requests and Other Disclosure, a copy of Espinoza's Additional Disclosure, and a copy of Espinoza's Bill of Particulars from the underlying actions. (Ex. O p. 5 ¶ 4, p. 20 ¶ 11). Also, attached hereto as **Appendix Exhibit "3 and 4"** is a copy of Espinoza's, the underlying plaintiff, deposition transcript. (Ex. 3 p. 58; Ex. 4 p. 102); see also (Ex. 2 p. 41)."

**RESPONSE:** Admit only that Espinoza's Response to Plaintiff's First Set of Requests and Other Disclosure is annexed as Exhibit "O" and portions of Espinoza's deposition transcript is annexed as Appendix Exhibits "3" and "4."

47.     "Jim Associates performed work at the premises pursuant to its contract with Ask, referenced here as the "Jim Associates Master Subcontract Agreement". See attached hereto as **Exhibit "P"** a copy of the Jim Associates Master Subcontract Agreement that was included in Exhibit A of DAVS' and Ask's Supplemental Response to Plaintiff's First Set of Requests for Documents and Other Disclosure, which is also attached hereto."

**RESPONSE:** Admits that Jim Associates executed the "Jim Associates Master Subcontract," but that the copy annexed to Plaintiff's R. 56.1 Statement was not fully executed by

19

Ask. The Responding Defendants otherwise refer to the "Jim Associates Master Subcontract" for its complete terms and conditions. *See* Exhibit "P".

48. "The Jim Associates Master Subcontract designated Ask as the contractor for the work described. (Ex. P p. 8)."

**RESPONSE:** Admits that the "Jim Associates Master Subcontract" designated Ask as the contractor, but that the copy annexed to Plaintiff's R. 56.1 Statement was not fully executed by Ask. The Responding Defendants otherwise refer to the "Jim Associates Master Subcontract" for its complete terms and conditions. *See* Exhibit "P".

49. "The Jim Associates Master Subcontract designated Jim Associates as the subcontractor for the work described. (Ex. P. p. 8)"

**RESPONSE:** Admits that Jim Associates is designated as subcontractor but deny the paragraphs cited by Plaintiff (see Exhibit "P" p. 8) stand for what they were cited for. The Responding Defendants otherwise refer to the "Jim Associates Master Subcontract" for its complete terms and conditions. *See* Exhibit "P".

50. "Under the Jim Associates Master Subcontract, Jim Associates assumed all obligations, risks and responsibilities that were assumed by Ask in its contract with DAVS. (Ex. P p.8)."

**RESPONSE:** Admitted and respectfully refers to the Jim Associates Master Subcontract for its complete terms and conditions. *See* Exhibit "P".

51. "Jim Associates submitted several invoices and/or proposals to Ask and Gus, the principal of Kalnitech, for work at the premises, dated May 27, 2019 (Ex. R p. 17), June 12, 2019 (Ex. R p. 19), June 26, 2019 (Ex. R p. 15), July 18, 2019 (Ex. Q p. 6) and September 3, 2019 (Ex. Q p. 26). See attached hereto as **Exhibit "Q"** and **Exhibit "R"**, respectively, a copy of Jim

Associates documents produced via subpoena and a copy of Jim Associate's documents that were produced as Exhibit B of DAVS' and Ask's initial Response to Plaintiff's First Set of Requests for Documents and Other Disclosure in the Second Action, which authenticated said documents, also are attached as part of said Exhibits."

**RESPONSE:** Admit that invoices and/or proposals dated May 27, 2019, June 12, 2019, June 26, 2019, July 18, 2019 and September 3, 2019 are annexed as Exhibits "Q" and "R" but deny that same evidences "work." *See* Exhibits "Q" and "R."

52. "Either Gus from Kalnitech was the general contractor and/or Ask was the general contractor for the work performed at the premises, including the work claimed to have been performed by Espinoza at the time of his accident/injuries. See attached hereto as **Appendix Exhibit "5"** a copy of Dwayne Hudson's, on behalf of Davs, deposition transcript. (Ex. 5 p. 15, 20); (Ex. 1 p. 32, 44, 46, 76); (Ex. 2 p. 19)."

**RESPONSE:** Admit that portions of the deposition testimony of Dwayne Hudson is annexed as Appendix Exhibit "5" and respectfully refers to the testimony for the complete context of what was being asked of Dwayne Hudson.

53. "Kalnitech and Ask each hired subcontractors for the project. (Ex. 1 p. 103-105, 129)(Ex. 2 p. 27, 28, 49)."

**RESPONSE:** Admit that is the testimony as set forth in Appendix Exhibits "1" and "2."

54. "Kalnitech and its subcontractors performed demo work, concrete work, painting, waterproofing, and roof patch work. (Ex. 2 p. 28)."

**RESPONSE:** Admit that is the testimony of Gus Stoupakas as set forth in the testimony in Appendix Exhibit "2."

55.    "Ask hired contractors to perform plumbing, mechanical, HVAC, electrical, roofing, and fence work. (Ex. 1 p. 103-105, 129); (Ex. 2 p.32)."

**RESPONSE:** Admit that portions of the respective depositions of David Kleeman and Gus Stoupakis' are annexed as Appendix Exhibits "1" and "2", and respectfully refers to said testimony for the complete context of what was being asked of the respective witnesses.

56.    "Both Kalnitech, and David Kleeman, the principal of DAVS and Ask, had a prior relationship with Jim Associates prior to Jim working at the premises. (Ex. 1 p.107); (Ex. 2 p. 36, 41)."

**RESPONSE:** Deny as to the foregoing statement as "relationship" is undefined and respectfully refer to the testimony for the complete context of what was being asked of the respective witnesses.

57.    "Ask hired Jim Associates. (Ex. 1 p. 32, 34); (Ex 2 p. 33-34, 41, 57, 58)."

**RESPONSE:** Deny as to the foregoing statement as the testimony cited by Plaintiff does not stand for what it is cited for, and respectfully refers to the testimony for the complete context.

58.    "Jim Associates was hired to perform interior finishing work. (Ex. 1 p. 107); (Ex. 2 p. 33)."

**RESPONSE:** Admit that portions of the respective depositions of David Kleeman and Gus Stoupakis' are annexed as Appendix Exhibits "1" and "2" and respectfully refers to the testimony for the complete context of what was being asked of the witnesses.

59.    "Ask paid Jim Associates for the work performed at the premises. (Ex. 1 p. 107-108)."

**RESPONSE:** Admit that portions of the respective deposition of David Kleeman on behalf of Ask is annexed as Appendix Exhibit "1" and respectfully refers to the testimony for the complete context of what was being asked of the witness.

60.     "All work performed at the premises was scheduled and supervised by Gus and Kalnitech. (Ex. 1 p. 127, 130, 146, 148)."

**RESPONSE:** Admit that is the testimony of David Kleeman as set forth in Appendix Exhibit "1" and respectfully refers to the testimony for the complete context.

61.     "The Falls Lake policy's "Exclusion- Injury to Employees, Contractors and Employees of Contractors" endorsement bars coverage to all claims pertaining to Espinoza's alleged injury as an employee of a contractor for any insured in that Espinoza alleges that he was injured in the course of his employment with Jim Associates, a subcontractor retained by Davs, Ask, and/or Kalnitech, and the endorsement bars coverage even if Davs and Ask prove the requirements for status as an additional insured under the Additional Insured endorsements of the Policy, as well as applies to the claims asserted amongst Davs, Ask, and/or Kalnitech for indemnity and contribution because of bodily injury to any contractor or any contractor's employee working for any insured. (Ex. G p. 64)."

**RESPONSE:** Deny.  The duty to defend is broader than the duty to indemnify and arises only from a review of the allegations in the Complaints to the Underlying Actions. Here, the allegations in the Complaints to the Underlying Actions triggers a duty to provide the Responding Defendants with a defense under the Falls Lake Policy. *See,* Exhibits "A" and "D."  Fall's Lake's reliance on extrinsic evidence is impermissible. Moreover, said exclusion is vague and ambiguous and Plaintiff should not allowed to rely upon same in denying coverage to Kalnitech and/or the Responding Defendants.

## THE RESPONDING DEFENDANTS'
## COUNTER-STATEMENT OF ADDITIONAL MATERIAL FACTS

1.  The Complaint to the First Action alleges that Kalnitech's negligence caused or contributed to Espinoza's accident. *See* Exhibit "A" of the Verveniotis Declaration, ¶¶ 56-58.

2.  The Complaint to the Second Action alleges that Kalnitech's negligence caused or contributed to Espinoza's accident. *See* Exhibit "D" of the Verveniotis Declaration, ¶¶ 26-28.

3.  The Falls Lake Policy included a "Primary and Noncontributory-Other Insurance Condition," which provides in relevant part:

> The following is added to the Other Insurance Condition and supersedes any provision to the contrary:
>
> PRIMARY AND NONCONTRIBUTORY INSURANCE
> This insurance is primary to and will not seek contribution from any other insurance available to an additional insured under your policy provided that:
>
> (1)  The additional insured is a Named Insured under such other insurance; and
>
> (2)  You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

*See* Exhibit "G" of the Verveniotis Declaration, p. 28 of 64.

4.  Pursuant to said provision, the Fall Lake Policy is primary to any other coverage available to the Responding Defendants and the Falls Lake Policy will not seek any contribution from such other coverage. *Id.*

5.  In the Amended Complaint, Falls Lake alleges the following in Paragraph 30:

> To the extent the claims at issue in the Espinoza Actions pertain to "bodily injury" of an "employee" of an insured arising out of or in the course of employment by any insured or performing duties related to the conduct an [sic] any insured's business or contract, subcontractor, or employee of a contractor or subcontractor, FLNIC has properly denied coverage as to the Espinoza Actions as excluded from coverage under the Policy by operation of "EXCLUSION OF

INJURY    TO    EMPLOYERS,    CONTRACTORS    AND
EMPLOYEES OF CONTRACTORS" Endorsement listed on Form
SN 0006 0713.

*See*, Exhibit "K" of the Verveniotis Declaration, ¶ 30.

Dated: Woodbury, New York
         March 22, 2024

_____
LYNSAY A. DYSZLER (LS0573)