UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------X
FALLS LAKE NATIONAL INSURANCE CO.,

              *Plaintiff*,

    – against –

KALNITECH CONSTRUCTION CORP., DAVS
PARTNERS LLC, STALIN RODRIGO REYES
ESPINOZA, and ASK ELECTRICAL
CONTRACTING CORP.,

              *Defendants*.

KALNITECH CONSTRUCTION CORP.,

              *Counterclaimant*,

    – against –

FALLS LAKE NATIONAL INSURANCE CO.,

              *Counter-Defendant*.
--------------------------------X

**MEMORANDUM & ORDER**

22-CV-1473(KAM)(PK)

**KIYO A. MATSUMOTO**, *United States District Judge*:

On June 28, 2019, Stalin Rodrigo Reyes Espinoza injured his arm falling from a ladder while renovating a property in Queens, New York.  He sued in state court, bringing personal injury claims arising from the June 28, 2019 fall against the property owner, DAVS Partners LLC ("DAVS"), and against two contractors hired for the renovation, ASK Electrical Contracting Corp. ("ASK") and Kalnitech Construction Corp. ("Kalnitech").  Falls Lake National Insurance Co. ("Falls Lake"), which had issued an insurance policy to Kalnitech, commenced this action on March 16, 2022, and amended

its complaint on June 23, 2022, (ECF No. 1 (Complaint); ECF No. 23 (Amended Complaint)), seeking a declaration that it has no obligation, pursuant to an insurance policy that Falls Lake issued to Kalnitech, to defend or indemnify any claims asserted by Mr. Espinoza against DAVS, ASK, or Kalnitech in either of two underlying state court actions: (1) an action filed by Mr. Espinoza against Kalnitech and DAVS[1] (the "First Action") (*see* ECF No. 74-4 (Complaint in First Action)); or (2) an action filed by Mr. Espinoza against ASK[2] (the "Second Action," and together with the First Action, the "Underlying Actions") (*see* ECF No. 74-7 (Complaint in Second Action)).

Presently before the Court are Falls Lake's motion for summary judgment declaring that it has no obligation, pursuant to its insurance policy with Kalnitech, to defend or indemnify any claims asserted in the Underlying Actions (ECF No. 74), Falls Lake's 56.1 Statement and other submissions in support of its motion (ECF No. 74-1 to -27; ECF No. 81-1 to -4), the opposition memorandum and 56.1 Counterstatement jointly submitted by ASK and DAVS (ECF Nos. 75 & 76), Kalnitech's opposition memorandum, declarations, and 56.1 Counterstatement (ECF No. 77, 77-1, 77-2 & 77-11), Mr.

---

[1] *Espinoza v. DAVS and Kalnitech*, No. 515197/2019 (N.Y. Sup. Ct. filed July 12, 2019).

[2] *Espinoza v. ASK*, No. 514760/2022 (N.Y. Sup. Ct. filed May 19, 2022).

2

Espinoza's opposition declaration (ECF No. 79), and Falls Lake's reply memorandum (ECF No. 78).

For the reasons set forth below, Falls Lake's motion for summary judgment is granted.

## BACKGROUND

### A.   The 217-14 Hempstead Renovation

Unless otherwise noted, the following facts are deemed undisputed based on the parties' submissions.  On March 11, 2019, DAVS executed an agreement hiring ASK as a general contractor to perform a "complete renovation and buildout" of 217-14 Hempstead Avenue in Queens, New York ("217-14 Hempstead").  (*See* ECF No. 74 ("Motion" or "Mot.") Ex. L ("DAVS/ASK Prime Contract") at 1; *see also* ECF No. 74-3 ("Falls Lake 56.1 Statement") ¶¶ 31–35; ECF No. 75 ("DAVS and ASK 56.1 Counterstatement") ¶¶ 31–35; ECF No. 77-1 ("Kalnitech 56.1 Counterstatement") ¶¶ 30–34[3]; ECF No. 79 ("Espinoza Opp.") ¶ 4 (adopting and incorporating 56.1 Counterstatements of Kalnitech, DAVS, and ASK).)  The DAVS/ASK Prime Contract defines ASK as the "Contractor," and defines DAVS as the "Owner."  (DAVS/ASK Prime Contract at 1.)  Section Fourteen

---

[3]  Kalnitech's 56.1 Counterstatement fails to quote or respond to paragraph 19 of Falls Lake's 56.1 Statement.  Thus, its paragraphs are incorrectly numbered beginning with its own paragraph 19 and, in this instance, paragraphs 30–34 respond to paragraphs 31–35 of Falls Lake's 56.1 Statement.  The Court construes paragraphs 19 through 60 of Kalnitech's 56.1 Counterstatement as responding, respectively, to paragraphs 20 through 61 of Falls Lake's 56.1 Statement.

of the DAVS/ASK Prime Contract provides, in pertinent part, that ASK "shall purchase and maintain insurance" naming DAVS "as an additional insured on a primary and non-contributory basis." (*Id.* at 4-5; Falls Lake 56.1 Statement ¶¶ 36-37; DAVS and ASK 56.1 Counterstatement ¶¶ 36-37; Kalnitech 56.1 Counterstatement ¶¶ 35-36; Espinoza Opp. ¶ 4.) Vanessa Kleeman signed the DAVS/ASK Prime Contract on behalf of DAVS, and her husband, David Kleeman, signed on behalf of ASK. (DAVS/ASK Prime Contract at 7; ECF No. 81-1 (Kleeman Dep.) at 60:2-12.)

The following day, on March 12, 2019, ASK executed an agreement hiring Kalnitech as a subcontractor to complete the renovation. (*See* ECF No. 74-16, Mot. Ex. M ("ASK/Kalnitech Subcontract") at 8[4]; *see also* Falls Lake 56.1 Statement ¶¶ 39-40; DAVS and ASK 56.1 Counterstatement ¶¶ 39-40; Kalnitech 56.1 Counterstatement ¶¶ 38-39; Espinoza Opp. ¶ 4.) The ASK/Kalnitech Subcontract defines ASK as the "Contractor," defines Kalnitech as the "Subcontractor," and defines the "Owner" as "various clients" with whom ASK "contemplates that from time to time it will enter into prime construction contracts." (ASK/Kalnitech Subcontract at 8.) For purposes of the ASK/Kalnitech Subcontract, the "Owner" is DAVS. (*See* Falls Lake 56.1 Statement ¶ 41; DAVS and ASK 56.1

---

[4]  Pin citations to this document refer to the pagination assigned by the Court's online CM/ECF system.

Counterstatement ¶ 41; Kalnitech 56.1 Counterstatement ¶ 40; Espinoza Opp. ¶ 4.) Section Four of the ASK/Kalnitech Subcontract provides, in pertinent part, that Kalnitech would purchase comprehensive general liability insurance, would include ASK and the "Owner" as additional insureds, and would include "any other additional insured in the Owner/Contractor [DAVS/ASK] Agreement for ongoing work and completed operations." (ASK/Kalnitech Subcontract at 8–9 (emphasis removed).) Section Four further provides that "additional insured coverage is on a primary and non-contributory basis," that "the Contractor's [ASK's] policy is excess of the Subcontractor's [Kalnitech's] insurance," and "the Contractor's [ASK's] insurance shall not be called upon to contribute to the Subcontractor's [Kalnitech's] insurance." (*Id.* at 9 (emphasis removed); *see also* Falls Lake 56.1 Statement ¶¶ 41–45; DAVS and ASK 56.1 Counterstatement ¶¶ 41–45; Kalnitech 56.1 Counterstatement ¶¶ 40–44; Espinoza Opp. ¶ 4.) Gus Stoupakis signed the ASK/Kalnitech Subcontract on behalf of Kalnitech, and David Kleeman signed on behalf of ASK. (ASK/Kalnitech Subcontract at 11.)

Thereafter, as memorialized in an agreement dated July 15, 2019, ASK contracted with JIM Associates ("JIM") to assist in

completing the renovation project at 217-14 Hempstead.[5]  (*See* ECF No. 74-19, Mot. Ex. P ("ASK/JIM Subcontract") at 8[6]; *see also* Falls Lake 56.1 Statement ¶¶ 47–50; DAVS and ASK 56.1 Counterstatement ¶¶ 47–50; Kalnitech 56.1 Counterstatement ¶¶ 46–49; Espinoza Opp. ¶ 4.)  The ASK/JIM Subcontract defines ASK as the "Contractor," defines JIM as the "Subcontractor," and defines the "Owner" as "various clients" with whom ASK "contemplates that from time to time it will enter into prime construction contracts."  (ASK/JIM Subcontract at 8.)[7]

On May 28, 2019, Jorge Moscoso, on behalf of JIM, emailed a proposal for the 217-14 Hempstead renovation project to Mr. Stoupakis, Kalnitech's representative.  (ECF No. 74-21, Mot. Ex.

---

[5]  As discussed *infra*, JIM began work on the renovation project at 217-14 Hempstead before July 15, 2019.

[6]  Pin citations to this document refer to the pagination assigned by the Court's online CM/ECF system.

[7]  Falls Lake asserts, and Kalnitech admits, that ASK hired JIM.  (*See* Falls Lake 56.1 Statement ¶ 57 (citing ECF No.81-1 (Kleeman Dep.) at 32, 34; ECF No. 81-2 (Stoupakis Dep.) at 33–34, 41, 57–58); Kalnitech 56.1 Counterstatement ¶ 56.)  DAVS and ASK deny this claim on the basis that "the testimony cited by Plaintiff does not stand for what it is cited for."  (DAVS and ASK 56.1 Counterstatement ¶ 57.)  Record testimony cited by Falls Lake, however, corroborates the written ASK/JIM Subcontract and demonstrates that ASK hired JIM.  (*See* ECF No.81-1 (Kleeman Dep.) at 108 ("Q.  Did A.S.K. Electrical sign a contract or enter into a contract with JIM Associates for this job? A.  Yes.  Q.  Okay, did you sign that contract on behalf of A.S.K.? A.  I believe so."); ECF No. 81-2 (Stoupakis Dep.) at 57 ("Q.  And it is your understanding that David or A.S.K. hired Jim Associates, not Kalnitech; correct? A.  Correct."); *id.* at 57–58 ("Q.  So it was your understanding that clearly Jim Associates was a subcontractor of A.S.K. and not Kalnitech; correct? A.  Correct . . . .").)

R. at 13.[8])  The following day, May 29, 2019, Mr. Stoupakis emailed JIM's proposal to Mr. Kleeman, ASK's representative.  (*Id.*)  On June 26, 2019, Mr. Moscoso emailed Mr. Kleeman "the proposal . . . and invoice . . . [f]or 1st payment." (*Id.* at 14.)  Attached to Mr. Moscoso's email was a proposal dated May 27, 2019 for a total amount of $88,737, and an invoice for a total of $32,256, reflecting a prior payment to JIM of $12,000.  (*Id.* at 15.)  Thus, although the ASK/JIM Subcontract was dated July 15, 2019, the invoice established that JIM worked on the 217-14 Hempstead renovation project prior to that date.  (*See* Falls Lake 56.1 Statement ¶ 51; DAVS and ASK 56.1 Counterstatement ¶ 51[9]; Kalnitech 56.1 Counterstatement ¶ 50; Espinoza Opp. ¶ 4.)

### B.  Mr. Espinoza's Injury

In the Underlying Actions, Mr. Espinoza claims that on June 28, 2019, while he was "lawfully and carefully working on a ladder" at 217-14 Hempstead, he fell from the ladder and was injured.  (*See generally* ECF No. 74-4, Mot. Ex. A (Complaint in First Action) ¶ 31; ECF No. 74-7, Mot. Ex. D (Complaint in Second Action) ¶ 25; *see also* Falls Lake 56.1 Statement ¶¶ 1-2, 11-12; DAVS and ASK

---

[8]  Pin citations to this document refer to the pagination assigned by the Court's online CM/ECF system.

[9]  DAVS and ASK admit that JIM submitted invoices and proposals dated between May 27, 2019 and September 3, 2019, but "deny that same evidences 'work.'" (DAVS and ASK 56.1 Counterstatement ¶ 51.)

56.1 Counterstatement ¶¶ 1–2, 11–12; Kalnitech 56.1 Counterstatement ¶¶ 1–2, 11–12; Espinoza Opp. ¶ 4.[10]) The Underlying Actions were consolidated into a single action on the docket of the First Action. (*See* Mot. at 3; ECF No. 76 ("DAVS and ASK Opp.") at 2; Order, *Espinoza v. DAVS*, No. 515197/2019 (N.Y. Sup. Ct. Jan. 9, 2024) (consolidating Underlying Actions).)

At the time of Mr. Espinoza's fall, and for approximately one month before the fall, it is undisputed that Mr. Espinoza was an employee of JIM. (*See* Falls Lake 56.1 Statement ¶ 46; DAVS and ASK 56.1 Counterstatement ¶ 46[11]; Kalnitech 56.1 Counterstatement ¶ 45; Espinoza Opp. ¶ 4; *see also* ECF No. 74-18, Mot. Ex. O (Mr.

---

[10]    DAVS, ASK, and Kalnitech, although they admit that the Underlying Actions allege that Mr. Espinoza was injured at 217-14 Hempstead, deny that the Underlying Actions allege Mr. Espinoza's injury occurred during the course of his employment. (*See* DAVS and ASK 56.1 Counterstatement ¶ 2, 12 (citations omitted); Kalnitech 56.1 Counterstatement ¶ 2, 12 (citations omitted). The significance of these denials is addressed *infra*.

[11]    DAVS and ASK "[a]dmit only" that Exhibit O to the Motion is Mr. Espinoza's response to Falls Lake's first set of discovery requests and that Exhibits 3 and 4 are excerpts of Mr. Espinoza's deposition transcript. (DAVS and ASK 56.1 Counterstatement ¶ 46.) DAVS and ASK fail to cite any admissible evidence to create a dispute of fact as to the contention of paragraph 46 of Falls Lake's 56.1 Statement that the "claims asserted in the Underlying Actions all arise from injuries as a result of an accident claimed by [Mr.] Espinoza while he was employed by Jim Associates Corp., working on the premises." Failure to expressly deny a statement of material fact or provide contrary record evidence constitutes an admission. *See Cui v. FBI*, 551 F. Supp. 3d 4, 15 (E.D.N.Y. 2021) (deeming facts in movant's 56.1 statement as "admitted where supported by the record" where the nonmovant "incorporate[d]" the movant's statements of undisputed facts (citing *Est. of Keenan v. Hoffman-Rosenfeld*, 833 F. App'x 489, 491 (2d Cir. 2020))); *Ball v. Marriott Int'l, Inc.*, 627 F. Supp. 3d 296, 308 n.2 (S.D.N.Y. 2022) (considering "facts to be admitted" where nonmovant "dispute[d]" those facts but failed to cite admissible evidence in the record to controvert the facts). Thus, the Court deems paragraph 46 of Falls Lake's 56.1 Statement admitted to the extent supported by the record.

Espinoza's Resps. to Falls Lake's First Set of Disc. Reqs.) at 5 ("there is no dispute as to the identity of Mr. Espinoza's employer on the date of the accident, Jim Associates, Corp."); *id.* at 20 ("Plaintiff was employed by Jim Associates Corp."); ECF No. 81-2 (Stoupakis Dep.) at 41 ("Q. And is it your understanding that the plaintiff, Mr. Reyes Espinoza, he was working for that company, Jim Associates; is that your understanding? A. Correct."); ECF No. 81-3 (Espinoza Dep.) at 58:21-25 (Mr. Espinoza testified that he started working for JIM in approximately May 2019); *id.* at 102:12-14 (Mr. Espinoza testified that when he fell on June 28, 2019, he was working for JIM).) Mr. Espinoza had begun working for JIM in approximately May 2019, and had worked on the 217-14 Hempstead renovation project on approximately two separate occasions before he fell on June 28, 2019. (ECF No. 81-4 (Hudson Dep.) at 11:6-19, 27:11-20 (foreman "running the project" for ASK testified that he "probably saw [Mr. Espinoza] twice on that project" prior to June 28, 2019).)

The claims asserted in the Underlying Actions all arise from work performed pursuant to the ASK/Kalnitech Subcontract. (*See*

Falls Lake 56.1 Statement ¶ 38; DAVS and ASK 56.1 Counterstatement ¶ 38[12]; Kalnitech 56.1 Counterstatement ¶ 37[13]; Espinoza Opp. ¶ 4.)

---

[12]    DAVS and ASK "[a]dmit only" that Exhibit M is the ASK/Kalnitech Subcontract, that Exhibit N is a discovery response by ASK, and that Exhibit 2 is an excerpted deposition transcript of Mr. Stoupakis.  For the same reasons noted above with respect to paragraph 46 of Falls Lake's 56.1 Statement, *see supra* note 11, the Court deems paragraph 38 of Falls Lake's 56.1 Statement admitted by DAVS and ASK to the extent supported by the record.

[13]    Kalnitech contends that Mr. Espinoza's claims in the Underlying Actions "arose from work performed after Kalnitech had completed its work pursuant to the" ASK/Kalnitech Subcontract and that Kalnitech had "completed its work mid-June 2019, before [Mr.] Espinoza's accident."  Kalnitech cites portions of the record that do not support its contention that it had "completed its work mid-June 2019."  Only one of the sources cited by Kalnitech, Mr. Stoupakis's deposition, concerns when Kalnitech concluded its work at 217-14 Hempstead.

Mr. Stoupakis testified during his deposition that Kalnitech returned to 217-14 Hempstead after June 28, 2019 for "punch list stuff," and that he personally returned to 217-14 Hempstead for one day after June 28, 2019 to meet his "sub-over" to "make sure that she did the job correctly so we don't have to come back."  (ECF No. 81-2 (Stoupakis Dep.) at 43-44.)  Although Mr. Stoupakis also testified that "I think I had finished our [Kalnitech's] portion of the work some time, [in] like mid[-]June . . . 2019" (*id.* at 30:10-25), Mr. Stoupakis provides no specific factual allegations to support his conclusion that he thought Kalnitech had finished its work in mid-June 2019.  Thus, Mr. Stoupakis's testimony contains specific allegations that Kalnitech continued to work past June 28, 2019, and conclusory, equivocal statements that suggest otherwise. When presented with conclusory testimony by the principal of a nonmovant (ECF No. 81-2 at 10 (testimony that Mr. Stoupakis has owned Kalnitech since 2017)), the Court may disregard the conclusory statements and consider only the specific allegations.  *See, e.g.*, *Smith v. City of N.Y.*, 385 F. Supp. 3d 323, 338 (S.D.N.Y. 2019) ("The only evidence that Plaintiff points to is his own deposition testimony, which is conclusory and devoid of any specifics." (citation omitted)); *La Belle v. Barclays Cap. Inc.*, 664 F. Supp. 3d 391, 414 (S.D.N.Y. 2023) (citing *Kunik v. N.Y. City Dep't of Educ.*, 436 F. Supp. 3d 684, 695 (S.D.N.Y. 2020)), *aff'd*, 2024 WL 878909 (2d Cir. Mar. 1, 2024).

As discussed *infra*, however, Kalnitech's contention that Mr. Espinoza's claims in the Underlying Actions "arose from work performed after Kalnitech had completed its work pursuant to the" ASK/Kalnitech Subcontract, even if accepted, is immaterial to the Court's analysis.

## C.    Falls Lake's Disclaimer of Coverage

As previewed above, Falls Lake issued a policy of insurance to Kalnitech, policy number SKP 2004493 10, with a policy period of January 3, 2019 to January 3, 2020.  (ECF No. 74-10, Mot. Ex. G (the "Policy") at 1[14]; *see* Falls Lake 56.1 Statement ¶ 20; DAVS and ASK 56.1 Counterstatement ¶ 20; Kalnitech 56.1 Counterstatement ¶ 19; Espinoza Opp. ¶ 4.)  As pertinent here, the Policy required Falls Lake to defend and indemnify Kalnitech against "damages because of 'bodily injury' . . . to which this insurance applies," imparted to Falls Lake "the right and duty to defend the insured against any 'suit' seeking those damages even if the allegations of the 'suit' are groundless, false or fraudulent," and contained numerous limitations, waivers, and exceptions.  (Policy at 6-7, 23-28, 31-56, 59-64.)

Falls Lake received notice of Mr. Espinoza's claims in the First Action on August 9, 2019.  (ECF No. 74-2 (Affidavit of David Johnson) ¶ 11.)[15]  Falls Lake responded by letter dated September 3, 2019, disclaiming coverage based on, among other provisions, an

---

[14]  Pin citations to this document refer to the pagination assigned by the Court's online CM/ECF system.

[15]  Mr. Espinoza contends that the affidavit of David Johnson, dated February 8, 2024, and submitted in support of Falls Lake's Motion, is insufficient to establish that Falls Lake first received notice of Mr. Espinoza's claims on August 9, 2019.  (*See* ECF No. 79, ¶ 5, at 4.)  The Court addresses Mr. Espinoza's contention *infra* when discussing the timeliness of Falls Lake's disclaimer.

endorsement entitled "exclusion of injury to employees, contractors and employees of contractors" (the "Employee Exclusion").[16]  (ECF No. Mot. 74-11, Ex. H (Falls Lake September

_____

[16]  The Falls Lake Policy endorsement titled "exclusion of injury to employees, contractors, and employees of contractors" states, in full, as follows:

**EXCLUSION OF INJURY TO EMPLOYEES, CONTRACTORS AND EMPLOYEES OF CONTRACTORS**

This endorsement modifies insurance provided under the following:

**COMMERCIAL GENERAL LIABILITY COVERAGE PART**

Exclusion 2.e Employers Liability is deleted and replaced by the following:

2.e Employers Liability

This insurance does not apply to:

(1) "Bodily injury" to any "employee" of any insured arising out of or in the course of:

a) Employment by any insured; or

b) Performing duties related to the conduct of any insured's business;

(2) "Bodily injury" to any contractor or any "employee" of any contractor arising out of or in the course of the contractor or its employee performing services of any kind or nature whatsoever;

(3) Any alleged obligation of any insured to indemnify or contribute with another because of damages arising out of such "bodily injury" to an insured's employee or any contractor or any contractor's employee;

(4) "Bodily injury" sustained by the spouse, child, parent, brother or sister of any "employee" of any insured, or of a contractor, or any "employee" of any contractor as a consequence of any injury to any person as set forth in paragraph (1) and (2) of this endorsement.

This exclusion applies to all claims and suits by any person or organization for damages because of such "bodily injury", including damages for care and loss of services.

As used herein the definition of "employee" includes a "leased worker" and a "temporary worker".

This exclusion replaces the exclusion relating to "bodily injury" to employees and relatives of "employees" contained in the Exclusions Section of the policy to which this endorsement is attached and the definition of "employee" in said policy.

All other terms and conditions remain unchanged.

(Policy at 64, Form SN 0006 0713 (emphasis retained).)

3, 2019 disclaimer letter) at 15.)  After learning of the Second Action, which was filed on May 19, 2022, without notification from an insured, Falls Lake disclaimed coverage in a letter dated June 20, 2022 on the basis of, among other things, the Employee Exclusion.  (*See* ECF No. 74-13, Mot. Ex. J (June 20, 2022 disclaimer letter) at 6–7.)

### D.  Procedural History

Falls Lake commenced this action on March 16, 2022.  (*See* ECF No. 1 (Complaint).  DAVS answered on May 12, 2022.  (ECF No. 18.) Falls Lake filed an amended complaint on June 23, 2022, advancing principally the same allegations as in its March 16, 2022 complaint except that the amended complaint added allegations concerning Mr. Espinoza's Second Action.  (ECF No. 23 (Amended Complaint).) Answers to the amended complaint were filed by Kalnitech on July 21, 2022 (ECF No. 30), by ASK on July 29, 2022 (ECF No. 34), and by Mr. Espinoza on December 27, 2022 (ECF No. 45).[17]  When answering, Kalnitech also lodged a counterclaim seeking

---

[17]  As noted above, DAVS answered the March 16, 2022 complaint.  It did not, however, separately answer the June 23, 2022 amended complaint.  Falls Lake has not sought a certificate of default or a default judgment against DAVS, and in any event, default would likely be inappropriate where the allegations against DAVS have not substantially changed from the complaint, which DAVS answered, to the amended complaint, and where DAVS has continued to participate in this litigation by opposing Falls Lake's motion.  *See Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 97 (2d Cir. 1993) (noting that, although defendant did not answer or respond to plaintiff's second amended complaint, his response to plaintiff's first amended complaint "was responsive" because "the amended charges did not substantially alter the original allegations made against him").

declaratory judgment that Falls Lake owes Kalnitech a duty to defend the First Action. (*See* ECF No. 30, ¶¶ 48-65.)  Falls Lake answered the counterclaim on July 26, 2022.  (ECF No. 31.)

The parties then engaged in discovery, which they completed on approximately May 17, 2023.  (*See* May 17, 2023 Text Order (noting parties' "certification that discovery is now complete).) On July 13, 2023, the Court held a pre-motion conference on Falls Lake's anticipated motion for summary judgment (ECF No. 53) and, during that conference, encouraged the parties to engage in mediation.  (*See* July 14, 2023 Min. Entry.)

On November 1, 2023, following attempted mediation (*see* ECF Nos. 60-62), Falls Lake filed a motion for a second pre-motion conference on its anticipated motion for summary judgment.  (ECF No. 64.)  The Court held a pre-motion conference on January 11, 2024, during which it discussed the parties' positions on the existence of disputes regarding material facts, addressed the possibility of settlement in lieu of motion practice, and set a briefing schedule for this motion.  (*See* Jan. 11, 2024 Min. Entry.)

## LEGAL STANDARDS

### I.    Summary Judgment

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to

14

judgment as a matter of law." Fed. R. Civ. P. 56(a). A court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48 (emphasis retained). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of" the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Summary judgment is appropriate when, after construing the evidence in the light most favorable to the opposing party and drawing all reasonable inferences in the opposing party's favor, there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Russo v. Patchogue-Medford Sch. Dist.*, 129 F.4th 182, 185 (2d Cir. 2025) (citing *Hayes v. Dahlke*, 976 F.3d 259, 267 (2d Cir. 2020)).

## II.    Declaratory Judgment

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  An actual controversy exists where there is "a substantial controversy between parties having adverse legal interests."  *U.S. Underwriters Ins. Co. v. Image By J & K, LLC*, 335 F. Supp. 3d 321, 329 (E.D.N.Y. Aug. 14, 2018) (citing *Golden v. Zwickler*, 394 U.S. 103, 108 (1969); *Nike, Inc. v. Already, LLC*, 663 F.3d 89, 95 (2d Cir. 2011)).  The Declaratory Judgment Act provides that Court's "may declare," not that they "must declare."  28 U.S.C. § 2201(a).  Thus, district courts have broad discretion "to refuse to exercise jurisdiction over a declaratory action that they would otherwise be empowered to hear."  *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th 85, 99 (2d Cir. 2023) (quoting *Dow Jones & Co. v. Harrods Ltd.*, 346 F.3d 357, 359 (2d Cir. 2003)).

## DISCUSSION

## I.    Subject Matter Jurisdiction

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) because Falls Lake is a citizen of Ohio and North

Carolina, the Defendants are citizens of New York,[18] and the amount in controversy exceeds $75,000.[19]  *See Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 68 (2d Cir. 2012) (noting general principle, that "in determining jurisdiction, we realign the declaratory judgment claims and parties as they would appear in a coercive suit," applies "to the diversity jurisdiction context" (citations omitted)).

## II.    Discretionary Jurisdiction

As noted, "district courts retain 'broad discretion' to decline jurisdiction under the DJA [Declaratory Judgment Act]." *Admiral Ins. Co. v. Niagara Transformer Corp.*, 57 F.4th at 99

---

[18]  (*See* ECF No. 1 (Complaint) ¶¶ 1–4 (alleging citizenship); ECF No. 23 (Amended Complaint) ¶¶ 1–5 (same); ECF No. 18 (DAVS Answer to Complaint) ¶ 2 (admitting DAVS's New York citizenship); ECF No. 30 (Kalnitech Answer to Amended Complaint) ¶ 1 (responding to paragraphs 1–5 of the amended complaint without denying Kalnitech's New York citizenship); ECF No. 34 (ASK Answer to Amended Complaint) ¶ 5 (admitting ASK's citizenship); ECF No. 45 (Mr. Espinoza Answer) ¶ 4 (admitting Mr. Espinoza's citizenship).)

[19]  (*See, e.g.*, ECF No. 81-3 (Espinoza Dep.) at 153:16–24 ("Q.  Sir, what, if anything, can you no longer do today as a result of the injuries sustained in this accident?  A.  I can't work.  I can't go shopping to get the things that I need.  I have trouble bathing, washing myself.  I have trouble writing, walking, sleeping. I can't lift up anything, weight. Again, I can't work.  I can't do anything."); Mot. Ex. G at 2 (noting personal injury limit of $1,000,000)); *Garcia v. Fernandez*, 90 N.Y.S.3d 312, 314 (2d Dep't 2018) (reversing lower court's remittitur of $300,000 jury award for past and future pain and suffering for plaintiff whose herniations on her spine caused "pain, weakness, and tingling in the plaintiff's left hand" whose doctor testified was "likely not to improve over time" because appellate court determined $300,000 award "did not deviate materially from what would be considered reasonable compensation" (citations omitted)); *Gissinger v. Yung*, No. 04-cv-0534(BMC)(JO), 2007 WL 2228153, at *6 (E.D.N.Y. July 31, 2007) (collecting cases in which "the plaintiff suffered arm or side injury" and courts applying New York law awarded or affirmed awards between "$75,000 and $600,000 for past pain and suffering and between $40,000 and $1,000,000 for future pain and suffering").

(quoting *Niagara Mohawk Power Corp. v. Hudson River-Black River Regul. Dist.*, 673 F.3d 84, 106 n.7 (2d Cir. 2012)). The Second Circuit has instructed that the following factors are among those that should inform a district court's exercise of discretionary jurisdiction:

> (1) "whether the declaratory judgment sought will serve a useful purpose in clarifying or settling the legal issues involved"; (2) "whether such a judgment would finalize the controversy and offer relief from uncertainty"; (3) "whether the proposed remedy is being used merely for procedural fencing or a race to res judicata"; (4) "whether the use of a declaratory judgment would increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court"; (5) "whether there is a better or more effective remedy"; and (6) whether concerns for "judicial efficiency" and "judicial economy" favor declining to exercise jurisdiction.

*Id.* at 99–100 (alterations adopted; citations omitted; quoting *Niagara Mohawk Power*, 673 F.3d at 105; *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 141, 149 (3d Cir. 2014)). These factors are "non-exhaustive," and no single factor is dispositive in the exercise of discretionary jurisdiction. *See id.* at 100 (quoting *Reifer*, 751 F.3d at 146).

In this case, the enumerated factors, considered together, weigh in favor of exercising discretionary jurisdiction. The "declaratory judgment sought will serve a useful purpose in

clarifying or settling the legal issues involved" in whether the policy issued by Falls Lake to Kalnitech creates a duty to defend or indemnify Mr. Espinoza's claims; a "judgment would finalize the controversy" as to Falls Lake's responsibilities to defend and indemnify claims in the Underlying Actions and in so doing, "offer relief from uncertainty"; there is no indication that the parties have sought to invoke this Court's jurisdiction for "procedural fencing" or as part of a "race to res judicata"; the Court finds that the use of a declaratory judgment, in this case, would not "increase friction between sovereign legal systems or improperly encroach on the domain of a state or foreign court" because the issues of state law necessary for resolution of the motion do not require issues of first impression or otherwise interfere with matters of state adjudication; the Court finds that there is not "a better or more effective remedy" and that concerns for "judicial efficiency" and "judicial economy" do not militate substantially against exercising jurisdiction. *Id.* at 99–100 (alterations adopted; citations omitted; quoting *Niagara Mohawk Power*, 673 F.3d at 105; *Reifer*, 751 F.3d at 141, 149).

Consequently, the Court will exercise discretionary jurisdiction over Falls Lake's declaratory judgment claim. *See, e.g., Image By J & K*, 335 F. Supp. 3d at 329–30, 345–49 (noting factors and reaching merits of motion for summary judgment

19

declaring obligations of insurer); *Atl. Cas. Ins. Co. v. W. Park Assocs., Inc.*, 585 F. Supp. 2d 323, 326 (E.D.N.Y. 2008) (deciding summary judgment motion declaring obligations of insurer).

**III.    Choice of Law**

New York law applies for purposes of interpreting the insurance policy issued by Falls Lake to Kalnitech.  Although the Policy itself does not contain a choice-of-law provision, the parties' assumption concerning applicable law is "sufficient to establish the applicable choice of law," *Elysium Health, Inc. v. ChromaDex, Inc.*, No. 22-1059, 2023 WL 7037442, at *2 n.2 (2d Cir. 2023) (quoting *Trikona Advisors Ltd. v. Chugh*, 846 F.3d 22, 31 (2d Cir. 2017)).  Here, the parties have cited and applied New York law.  (*See* ECF No. 74-27 (Falls Lake Mem.) at ii–iv (other than federal authority, citing only New York authority); ECF No. 78 (Falls Lake Reply) at pages ii–iii (same); ECF No. 79 (Espinoza Opp.) ¶¶ 6–7 (applying New York law); *see also* ECF No. 77-11 (Kalnitech Opp. Mem.) (not disputing applicable law)).

The opposition filed jointly by DAVS and ASK cites primarily New York and federal law, but also cites three decisions from the Supreme Court of Vermont.  (*See* ECF No. 76 (DAVS and ASK Opp.) at ii–iii.)  The Supreme Court of Vermont decisions cited by DAVS and ASK are in accordance with New York law on the points for which they are cited.  *See Garneau v. Curtis & Bedell, Inc.*, 610 A.2d

20

132, 134 (Vt. 1992) (quoting New York Court of Appeals decision for the proposition that there is "no duty to defend if there is 'no possible factual or legal basis on which [an insurer] might eventually be obligated to indemnify'" (quoting *Allstate Ins. Co. v. Zuk*, 574 N.E.2d 1035, 1037 (N.Y. 1991))); *compare City of Burlington v. Nat'l Union Fire Ins. Co.*, 655 A.2d 719, 721 (Vt. 1994) ("an insurer's duty to defend is broader than its duty to indemnify," which is generally "determined by comparing the allegations in the complaint of the underlying suit to the terms of coverage in the policy" (citations omitted)), *with Emps. Ins. Co. of Wausau v. Harleysville Ins. Co. of N.Y.*, --- F. Supp. 3d. ---, 2024 WL 5405478, at *3 (E.D.N.Y. Dec. 13, 2024) (applying New York law and noting that "the duty to defend . . . precedes and is broader than the duty to indemnify" (citation omitted)), *and Mscichowski v. MLMIC Ins. Co.*, 210 N.Y.S.3d 870, 872 (4th Dep't 2024) ("an insurance company's duty to defend is broader than its duty to indemnify" and "an insurer will be called upon to provide a defense whenever the allegations of the complaint suggest a reasonable possibility of coverage" (alteration adopted; quoting *Auto. Ins. Co. of Hartford v. Cook*, 850 N.E.2d 1152 (N.Y. 2006))); *compare City of Burlington v. Assoc. Elec. & Gas Ins. Servs., Ltd.*, 669 A.2d 1181, 1183 (Vt. 1995) ("where a disputed term in an insurance policy is susceptible to two or more reasonable

interpretations, the ambiguity must be resolved in favor of the insured" (citation omitted)), *and Atkinson v. Town of Westmore*, 38 F. Supp. 2d 338, 343 (D. Vt. 1999) ("any ambiguity in the language of the policy [must] be resolved in favor of the insured" (citations omitted)), *with Endurance Am. Ins. Co. v. StoneX Commodity Sols., LLC*, 227 N.Y.S.3d 307, 309 (1st Dep't 2025) ("Any ambiguities in an insurance policy 'must be resolved against the insurer.'" (quoting *Westview Assoc. v. Guaranty Nat'l Ins. Co.*, 740 N.E.2d 220 (N.Y. 2000))).  Thus, New York law applies.

## IV.    Exclusionary Provision

### A.    Language of the Policy

"In determining an insurance coverage dispute, a court must first look to the language of the policy."  *Landau v. IDS Prop. Cas. Ins. Co.*, 214 N.Y.S.3d 67, 68 (2d Dep't 2024) (quoting *Holtzman v. Conn. Gen. Life Ins. Co.*, 183 N.Y.S.3d 160 (2d Dep't 2023)).  "As with any contract, unambiguous provisions of an insurance contract must be given their plain and ordinary meaning, and the interpretation of such provisions is a question of law for the court."  *Landau*, 214 N.Y.S.3d at 68 (quoting *Holtzman*, 183 N.Y.S.3d 160); *accord Ezrasons, Inc. v. Travelers Indem. Co.*, 89 F.4th 388, 394-95 (2d Cir. 2023) (citing *Universal Am. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 37 N.E.3d 78 (N.Y. 2015)). Although the insured bears the initial burden of proving coverage,

"the insurer bears the burden of proving that an exclusion applies to defeat coverage." *Gluck v. Mapfre Ins. Co. of N.Y.*, 198 N.Y.S.3d 758 (2d Dep't 2023) (quoting *J.P. Morgan Sec. Inc. v. Vigilant Ins. Co.*, 183 N.E.3d 443 (N.Y. 2021); citing *Consol. Edison Co. of N.Y. v. Allstate Ins. Co.*, 774 N.E.2d 687 (N.Y. 2002)). To avoid coverage by means of an exclusion, the insurer must establish the exclusion is "subject to no other reasonable interpretation." *J.P. Morgan*, 183 N.E.3d at 448 (quoting *Seaboard Sur. Co. v. Gilette Co.*, 476 N.E.2d 272 (N.Y. 1984); citing *Cragg v. Allstate Indem. Corp.*, 950 N.E.2d 500 (N.Y. 2011)).

Here, the Employee Exclusion "could not be clearer." *U.S. Underwriters Ins. Co. v. Affordable Hous. Found., Inc.*, 256 F. Supp. 2d 176, 179 (S.D.N.Y. 2003) (finding similar exclusion to be clear and unambiguous (citing *U.S. Underwriters Ins. Co. v. 614 Constr. Corp.*, 142 F. Supp. 2d 491, 494–95 (S.D.N.Y. 2001); *U.S. Underwriters Ins. Co. v. Roka LLC*, No. 99-cv-10136(AGS), 2000 WL 1473607 at *4 (S.D.N.Y. Sept. 29, 2000); *U.S. Underwriters Ins. Co. v. Zabar*, No. 97-cv-1738(ILG), 1999 WL 441472, at *3 (E.D.N.Y. May 28, 1999); *U.S. Underwriters Ins. Co. v. Beckford*, No. 93-cv-4272(FB), 1998 WL 23754, at *3–4 (E.D.N.Y. Jan. 20, 1998))). As pertinent here, the Employee Exclusion excludes from coverage bodily injury "to any contractor or any 'employee' of any contractor arising out of or in the course of the contractor or

its employee performing services of any kind or nature whatsoever."
(Policy at 64, Form SN 0006 0713.)

DAVS and ASK contend that the Employee Exclusion is ambiguous,
citing *Hastings Development, LLC v. Evanston Insurance Co.*, 701 F.
App'x 40 (2d Cir. 2017) and *United States Liability Insurance Co.
v. WW Trading Co. Insurance*, 813 F. App'x 636 (2d Cir. 2020). (*See*
ECF No. 76 (DAVS and ASK Opp.) at 9–10.)  The cases cited by DAVS
and ASK are "inapposite because they involve different
exclusions." *WW Trading*, 813 F. App'x at 640.  *See Hastings*, 701
F. App'x at 43–44 (finding policy language that excluded "bodily
injury to . . . an employee of *the Named Insured* arising out of
and in the course of employment by *any Insured*, or while performing
duties related to the conduct of *the Insured's* business" was
ambiguous because it could exclude either "coverage for injuries
to 'an employee of *the Named Insured*,'" or coverage for injuries
to "employees of *any*" insured, and was therefore ambiguous
(emphasis retained)); *WW Trading*, 813 F. App'x at 640 (finding
policy language that excluded bodily injury to "any employee of
any contractor arising out of performing services of any kind
whatsoever by such employee of such contractor for which any
insured may become liable in any capacity" was ambiguous because
it could exclude either coverage for bodily injury of any kind
arising out of services for which any insured may become liable,

24

or coverage for bodily injury for which any insured may become liable arising out of service of any kind (alterations adopted)).

Courts applying New York law have found exclusions similar to the one at issue here to be clear and unambiguous. *See Maxum Indem. Co. v. CLK Constr., Inc.*, No. 14-cv-1616(RRM)(LB), 2016 WL 4703654, at *4 (E.D.N.Y. Sept. 8, 2016) (finding exclusion to be plain and unambiguous where it excluded from coverage bodily injury to "Any person who is an 'employee', 'leased worker', 'temporary worker', or 'volunteer worker' of you or any insured arising out of and in the course of: (a) Employment by you or any insured; or (b) Performing duties related to the conduct of your or any insured's business."); *Moleon v. Kreisler Borg Florman Gen. Constr. Co.*, 758 N.Y.S.2d 621, 622-23 (1st Dep't 2003) (holding exclusion was plain and unambiguous where it excluded coverage for "bodily injury to an employee of an insured if it occurs in the course of employment"); *Bassuk Bros. v. Utica First Ins. Co.*, 768 N.Y.S.2d 479, 480-81 (2d Dep't 2003) (holding exclusion was plain and unambiguous where it excluded coverage for "bodily injury to an employee of an Insured if it occurs in the course of employment"); *Minchala v. 829 Jefferson, LLC*, 114 N.Y.S.3d 377, 380 (2d Dep't 2019) (collecting cases supporting finding that "Injury to Contractors" exclusion "unequivocally establishes that the policy does not require [the insurer] to defend, indemnify, or

contribute with another because of bodily injury to any employee of any insured or contractor"); *Campoverde v. Fabian Builders, LLC*, 922 N.Y.S.2d 435, 437 (2d Dep't 2011) ("the plain meaning of the employee exclusion invoked by [the insurer] is that the policy does not provide coverage for damages arising out of bodily injury sustained by an employee of any contractor hired by or for any insured in the course of the employee's employment" (citation omitted)); *Am. Eur. Ins. Co. v. Eire Concrete Inc.*, No. 23-cv-3918(LJL), 2025 WL 268095, at *2, *12 (S.D.N.Y. Jan. 22, 2025) (granting summary judgment to declare that insurer owed no duty to defend or indemnify based on identical policy exclusion).

Two provisions of the Policy that extend the definition of an insured are relevant to assessing the extent of the Employee Exclusion. The first provision, the "Current-Acts Provision," extends the definition of an insured to a person or organization for whom Kalnitech was "performing operations when you [Kalnitech] and such person or organization have agreed in writing in a contract or agreement that such person or organization be added as an additional insured," for purposes of bodily injury "caused, in whole or in part," by Kalnitech's acts or omissions, or by the "acts or omissions of those acting on your [Kalnitech's] behalf." (Policy at 29, Form CG 20 33 04 13, § A.) The second provision, the "Former-Acts Provision," extends the definition of an insured

26

to a person or organization with whom Kalnitech "agreed in a 'written contract' that such person or organization be added as an additional insured on your [Kalnitech's] policy" for purposes of bodily injury "caused, in whole or in part," by Kalnitech's work "performed for that additional insured and included in the 'products-completed operations hazard'." (*Id.* at 57, Form AE 01 49 11 15, § A.) "Products-completed operations hazard" is elsewhere defined to include bodily injury "arising out of" Kalnitech's work, exclusive of its ongoing work. (*See id.* at 20, Form CG 00 01 04 13, § V.16.)

### B.  Application

Applying the plain meaning of the Employee Exclusion, the Court finds that coverage does not extend to claims raised by Mr. Espinoza in the Underlying Actions.

Mr. Espinoza sustained his injury on June 28, 2019 while working for JIM on the renovation project at 217-14 Hempstead. (*See* Falls Lake 56.1 Statement ¶ 46; DAVS and ASK 56.1 Counterstatement ¶ 46; Kalnitech 56.1 Counterstatement ¶ 45.) Prior to June 28, 2019, as alleged in the Underlying Actions, *see Mscichowski*, 210 N.Y.S.3d at 872 (noting that in determining duty to defend a complaint, courts should assess allegations in complaint), either Kalnitech or ASK had hired JIM to perform work on 217-14 Hempstead. (*See* ECF No. 74-4, Mot. Ex. A (Complaint in

27

First Action) ¶¶ 42-49, 51-52, 55 (alleging that Kalnitech hired JIM to perform work at 217-14 Hempstead prior to June 28, 2019); ECF No. 74-7, Mot. Ex. D (Complaint in Second Action) ¶¶ 16-25 (alleging that ASK hired JIM to perform work at 217-14 Hempstead prior to June 28, 2019); ECF No. 74-9, Mot. Ex. F (ASK Third Party Complaint in Second Action) ¶¶ 8, 23-25 (alleging that JIM entered an agreement to provide services to ASK); *see also* ECF No. 74-21, Mot. Ex. R at 13-15 (May 2019 emails of JIM's proposal being forwarded from Kalnitech to ASK); Falls Lake 56.1 Statement ¶ 57; Kalnitech 56.1 Counterstatement ¶ 56; ECF No.81-1 (Kleeman Dep.) at 36, 107-08; ECF No. 81-2 (Stoupakis Dep.) at 33-34, 57-58.)

If Kalnitech hired JIM, then Mr. Espinoza was an employee of a contractor, JIM, of the named insured, Kalnitech (*see* ECF No. 74-10 (Policy) at 1 (listing Kalnitech as named insured)), and his bodily injury would therefore be excluded by the Employee Exclusion as he would have been an employee of a contractor of an insured. If, on the other hand, ASK hired JIM, then Mr. Espinoza would be an employee of a contractor, JIM, of an additional insured, ASK, and again his injury would be excluded as he would have been an employee of a contractor of an additional insured. ASK was an additional insured by operation of either the Former-Acts Provision or the Current-Acts Provision of the Policy. As to the Former-Acts Provision, the ASK/Kalnitech Subcontract constituted

a written contract requiring Kalnitech to purchase comprehensive general liability insurance and to include ASK and DAVS as additional insureds (ECF No. 74-16 (ASK/Kalnitech Subcontract) at 8-9), and Mr. Espinoza's injury was allegedly caused during or after Kalnitech's former work for ASK. (*See* Policy at 20, 57.) Alternatively, as to the Current-Acts Provision, ASK was an entity for whom Kalnitech was performing operations, Kalnitech had agreed in writing to add ASK as an additional insured, and Mr. Espinoza's injury was allegedly caused by Kalnitech's acts or omissions, or by the acts or omissions of those acting on Kalnitech's behalf. (Policy at 29; ECF No. 74-16 (ASK/Kalnitech Subcontract) at 8-9.)

Thus, JIM was hired either by Kalnitech, the named insured, or by ASK, an additional insured, and was therefore a contractor of an insured for purposes of the Employee Exclusion, making Mr. Espinoza an "employee of any contractor" whose injury "ar[ose] out of or in the course of the contractor or its employee performing services of any kind or nature whatsoever." (Policy at 64, Form SN 0006 0713); *see Campoverde*, 922 N.Y.S.2d at 436-37 (finding trial court erred by failing to enter summary judgment declaring insurer was not obligated to defend or indemnify due to employee exclusion where plaintiff alleged that he sustained bodily injuries while working for a contractor that he alleged was hired by either the named insured or by an additional insured because,

29

in either case, "plaintiff's claim falls wholly within the employee exclusion" (citations omitted)); *614 Constr. Corp.*, 142 F. Supp. 2d at 494–95 (finding employee exclusion supported disclaimer of coverage where injured worker was hired by a contractor that was hired by an insured, and policy excluded coverage for "bodily injury to any contractor hired or retained by or for *any insured or to any employee of such contractor*" (alterations adopted; emphasis retained)), *aff'd*, 23 F. App'x 92 (2d Cir. 2002); *see also Bayport Constr. Corp. v. BHS Ins. Agency*, 985 N.Y.S.2d 143, 145 (2d Dep't 2014) (finding employee exclusion at issue "applie[d] to coverage for the additional insureds" (citations omitted)).

Thus, because JIM was hired either by Kalnitech, the named insured, or by ASK, an additional insured, the apparent dispute as to which of those two entities hired JIM, however genuine, is immaterial and will not preclude entry of summary judgment. *See Anderson*, 477 U.S. at 247–48 ("the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact" (emphasis retained)). The Employee Exclusion therefore unambiguously operates to exclude claims arising out of the injury that Mr. Espinoza sustained as an employee of a contractor while working on the 217-14 Hempstead renovation, and, under the Policy, Falls Lake

does not owe a duty to defend or indemnify any claim arising from the injury that Mr. Espinoza sustained on June 28, 2019 while working on the 217-14 Hempstead renovation.  *See Campoverde*, 922 N.Y.S.2d at 437; *614 Constr. Corp.*, 142 F. Supp. 2d at 494-95; *Eire Concrete Inc.*, 2025 WL 268095, at *2, *12.

DAVS and ASK contend that the Employee Exclusion should not permit Falls Lake to avoid coverage where, in order to show the applicability of the exclusion, Falls Lake would need to rely on extrinsic evidence.  (*See* DAVS and ASK 56.1 Counterstatement ¶ 51; ECF No. 76 (DAVS and ASK Opp.) at 1-2, 7-8.)

Contrary to DAVS and ASK's contention, no extrinsic evidence is necessary to determine the applicability of the Employee Exclusion.  Instead, the allegations in the Underlying Actions, *see Mscichowski*, 210 N.Y.S.3d at 872, establish that ASK hired Kalnitech pursuant to a written contract, that JIM was retained by ASK or Kalnitech, and that Mr. Espinoza was working for JIM at the time of the accident.  (*See* ECF No. 74-4, Mot. Ex. A (Complaint in First Action) ¶¶ 23, 42-49, 51-52, 55 (alleging that Kalnitech was "hired and/or retained pursuant to a written contract and/or agreement" to provide "certain work, labor, services and material with respect to certain construction" at 217-14 Hempstead, that Kalnitech "retained" JIM to provide "work, labor and/or services at" 217-14 Hempstead, and that Mr. Espinoza was injured while

31

working at 217-14 Hempstead during the course of his employment); ECF No. 74-6, Mot. Ex. C (Kalnitech Answer to Complaint in First Action) ¶ 10 (admitting Kalnitech "was hired to perform certain construction work and that the work was completed before the date of the alleged accident"); ECF No. 74-7, Mot. Ex. D (Complaint in Second Action) ¶¶ 16-25 (alleging that ASK "retained" Kalnitech "pursuant to a written contract and/or agreement" to "provide work, labor and/or services" at 217-14 Hempstead, that ASK "retained" JIM to "provide work, labor and/or services" at 217-14 Hempstead, and that Mr. Espinoza was injured while working at 217-14 Hempstead during the course of his employment); ECF No. 74-9, Mot. Ex. F (ASK Third Party Complaint in Second Action) ¶¶ 8, 23-25 (alleging that the Second Action asserted claims for personal injury "sustained as a result of an accident alleged to have occurred on June 28, 2019, while [Mr. Espinoza] was in his course of performing work at the premises located at 217-14 Hempstead" and that JIM "entered into a written agreement whereby it agreed to provide certain services to" ASK); *see also* ECF No. 74-18, Mot. Ex. O (Mr. Espinoza's Resps. to Falls Lake's First Set of Disc. Reqs.) at 5 ("there is no dispute as to the identity of Mr. Espinoza's employer on the date of the accident, Jim Associates, Corp.").)

"The only possible interpretation of these allegations is that" when Mr. Espinoza was injured at 217-14 Hempstead he was

32

working for JIM, and therefore Mr. Espinoza's "claim falls wholly within the employee exclusion." *Campoverde*, 922 N.Y.S.2d at 437. Thus, applying the plain meaning of the language of the Policy, including the Employee Exclusion, to the allegations in the Underlying Actions, the Court finds that the Policy excludes coverage of Mr. Espinoza's claims in the Underlying Actions.

### C.  Waiver

Under New York law, an insurer who fails to disclaim liability for bodily injury by "giv[ing] written notice as soon as is reasonably possible," N.Y. Ins. Law § 3420(d)(2), "waives the right to disclaim coverage by reason of any policy exclusion." *Max Specialty Ins., Co. v. WSG Invs., LLC*, No. 09-cv-5237(CBA)(JMA), 2012 WL 3150579, at *5 (E.D.N.Y. Apr. 20, 2013) (citing *Zappone v. Home Ins. Co.*, 432 N.E.2d 783, 785–86 (N.Y. 1982)), *report and recommendation adopted*, 2012 WL 3150577 (E.D.N.Y. Aug. 2, 2012); *accord NGM Ins. Co. v. Blakely Pumping, Inc.*, 593 F.3d 150, 153 (2d Cir. 2010) (per curiam) (finding New York law requires insurers to provide notice when denying coverage "by reason of exclusion" but not "by reason of lack of inclusion" (citation omitted)); *see also Image By J & K*, 335 F. Supp. 3d at 341 n.9 ("By its plain terms, section 3420(d)(2) applies to insurance cases involving death or bodily injury claims arising out of a New York accident[.]" (alterations adopted; quoting

33

*KeySpan Gas E. Corp. v. Munich Reinsurance Am., Inc.*, 15 N.E.3d 1194 (N.Y. 2014))).

Mr. Espinoza contends that Falls Lake waived its right to disclaim coverage by operation of the exclusionary provisions of the Policy because Falls Lake has not offered adequate proof that it timely denied coverage. (*See* ECF No. 79 (Espinoza Opp.) ¶¶ 5-6 (citations omitted).) Specifically, Mr. Espinoza argues that Falls Lake failed to give "written notice as soon as is reasonably possible," that Falls Lake has not presented "adequate (any) [*sic*] proof" that it first received notice on August 9, 2019, or proof that "the disclaimer letter dated September 3, 2019 was actually sent/mailed on September 3, 2019," and that, as a result, Falls Lake waived the ability to rely on the Employee Exclusion to avoid coverage. (*See id.* ¶¶ 5-7.)

Mr. Espinoza's argument is unavailing. The only record evidence concerning the time of Falls Lake's notice and disclaimer shows that Falls Lake received notice on August 9, 2019 and disclaimed coverage on September 3, 2019. This 25-day period "falls well within the thirty-day window that courts routinely hold, as a matter of law, to be a reasonable timeframe." *Anderson v. Burlington Ins. Co.*, No. 19-cv-297(HKS), 2023 WL 3751929, at *13 (W.D.N.Y. June 1, 2023) (collecting cases). Thus, Falls Lake

did not waive its right to disclaim coverage by operation of the exclusionary provisions of the Policy.

First, as Mr. Espinoza admits in his opposition (ECF No. 79 (Espinoza Opp.) ¶ 5), Falls Lake has offered the sworn affidavit of David Johnson, in which Mr. Johnson states that (i) Mr. Johnson is a senior claims examiner responsible for handling Mr. Espinoza's claims arising from the injury Mr. Espinoza sustained on June 28, 2019; (ii) Mr. Johnson is "fully familiar with the facts and circumstances set forth in [his] affidavit"; and (iii) "[t]he first notice received by Falls Lake as to [Mr.] Espinoza's accident and claims was on August 9, 2019, which was when the insurer received notice of the First Action."  (ECF No. 74-2 (Affidavit of David Johnson), ¶¶ 1-2, 4, 11.)  Mr. Johnson's affidavit provides the only record evidence concerning when Falls Lake first had notice of Mr. Espinoza's accident or any related insurance claim.  Thus, the only notice date supported by the record is August 9, 2019. Mr. Espinoza "fail[s] to meet [his] burden to show a genuine issue of fact" exists as to when Falls Lake received notice. *Neth. Ins. Co. v. U.S. Underwriters Ins. Co.*, No. 14-cv-3568(NSR)(JCM), 2016 WL 297736, at *2 (S.D.N.Y. Jan. 21, 2016) (holding nonmovant failed to genuinely dispute that it received disclaimer letter where it stated that it did not receive the disclaimer letter "without pointing to any evidence in the record").

Second, Falls Lake disclaimed coverage on September 3, 2019, 25 days after receiving notice of the First Action on August 9, 2019. (*See* ECF No. 74-11, Mot. Ex. H.)  The date printed on the disclaimer letter is September 3, 2019.  There is a presumption that a letter was mailed on the same date shown on the letter. *See Ranaghan v. N.Y. Ass'n of Psychiatric Rehab. Servs.*, No. 20-cv-488(GLS)(ATB), 2021 WL 431165, at *2 (N.D.N.Y. Feb. 8, 2021) ("the letter is dated January 24, 2020, which, absent any evidence to the contrary, creates a presumption that it was mailed on that same day" (citation omitted; citing *Troise v. SUNY Cortland*, No. 18-cv-734(BKS)(ATB), 2021 WL 75708, at *5 (N.D.N.Y. Jan. 8, 2021))).  No nonmovant has provided any reason to doubt the accuracy of the September 3, 2019 date printed on Falls Lake's disclaimer letter (ECF No. 74-11, Mot. Ex. H), and "merely speculative or conclusory assertions" will not suffice to defeat a motion for summary judgment.  *Lopez v. Rutgers Cas. Ins. Co.*, 298 F. Supp. 3d 503, 512-13 (E.D.N.Y. 2018) (quoting *DiStiso v. Cook*, 691 F.3d 226, 230 (2d Cir. 2012)) ("'When the moving party has carried its burden, its opponent must do more than simply show that there is some metaphysical doubt as to the material facts,' and must offer 'some hard evidence showing that its version of the events is not wholly fanciful.'" (alterations adopted; first quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007); and then quoting

36

*Miner v. Clinton County*, 541 F.3d 464, 471 (2d Cir. 2008)). The Court therefore finds that Falls Lake's disclaimer letter was sent on September 3, 2019. Thus, the period from the August 9, 2019 receipt of notice to the September 3, 2019 disclaimer was 25 days.

The Court finds that this 25-day period between notice and disclaimer was timely as a matter of law. In some cases, unlike this one, courts have found "unexplained delays" of between 30 days and two months to be unreasonable as a matter of law. *See Image By J & K*, 335 F. Supp. 3d at 342–43 (citing *U.S. Underwriters Ins. Co. v. City Club Hotel, LLC*, 369 F.3d 102, 107 (2d Cir. 2004); *Montpelier U.S. Ins. Co. v. 240 Mt. Hope Realty Co.*, No. 15-cv-1033(JMF), 2015 WL 6395949, at *3 (S.D.N.Y. Oct. 22, 2015); *Mount Vernon Fire Ins. Co. v. Munoz Trucking Corp.*, 213 F. Supp. 3d 594, 605 (S.D.N.Y. 2016); *Hartford Ins. Co. v. Nassau County*, 389 N.E.2d 1061 (N.Y. 1979); *Guzman v. Nationwide Mut. Fire Ins. Co.*, 880 N.Y.S.2d 302 (2d Dep't 2009); *First Fin. Ins. Co. v. Jetco Contracting Corp.*, 801 N.E.2d 835 (N.Y. 2003); *W. 16th St. Tenants Corp. v. Pub. Serv. Mut. Ins. Co.*, 736 N.Y.S.2d 34, 35 (1st Dep't 2002); *Colonial Penn Ins. Co. v. Pevzner*, 698 N.Y.S.2d 310, 310 (2d Dep't 1999))). And in other cases, courts have found triable issues of fact for larger delays accompanied by an explanation such as the need of the insurer to conduct an investigation before disclaiming coverage. *See City Univ. of N.Y. v. Utica First Ins.*

*Co.*, 181 N.Y.S.3d 525, 526 (1st Dep't 2022) (affirming denial of summary judgment where insurer disclaimed coverage 86 days after notice of underlying action because "the application of [the insurer's] employee exclusion was not readily apparent" and therefore an investigation "into the relationship between the parties" may have been warranted).

In still other cases, similar to this one, courts have been "able to conclude as a matter of law that [a] defendant [insurer] complied with Insurance Law § 3420(d)" by providing timely notice. *See Lake Carmel Fire Dep't, Inc. v. Utica First Ins. Co.*, 784 N.Y.S.2d 921 (N.Y. Sup. Ct. 2004) (unreported table decision) (disclaimer sent 41 days after notice complied with section 3420(d)(2) where insurer "promptly began an investigation of the accident and" obtained confirmation that an employment exclusion applied approximately two weeks before disclaiming coverage); *Bassuk Bros. v. UTICA First Ins. Co.*, No. 15285/00, 2002 WL 31925593, at *2, *8 (N.Y. Sup. Ct. Nov. 1, 2002) (holding that disclaimer approximately six month after receipt of demand for defense and indemnification and 9 days after receiving report indicating basis for application of employee exclusion was timely as a matter of law), *aff'd*, 768 N.Y.S.2d 479 (2d Dep't 2003); *see also 614 Constr. Corp.*, 142 F. Supp. 2d at 495 (finding 45-day delay in disclaiming coverage timely as a matter of law where

38

insurer investigated the applicability of policy exclusion "and disclaimed coverage only two (2) days after receiving advice of counsel regarding the basis for such disclaimer").

Here, after notice of the First Action on August 9, 2019 but "before taking a coverage position" on September 3, 2019, Falls Lake "requested of its insured's representative, Kosta 'Gus' Stoupakis, copies of all contracts as to the work performed at 217-14 Hempstead . . . including with subcontractors, but the insured failed to provide any contracts to the insurer." (ECF No. 74-2 (Affidavit of David Johnson), ¶¶ 11-12.) "It is perfectly reasonable that the insurer verify the surrounding facts so that, if it chooses to disclaim, it does so on the basis of concrete evidence." *Lake Carmel Fire Dep't*, 784 N.Y.S.2d 921 (quoting *Mount Vernon Fire Ins. Co. v. Harris*, 193 F. Supp. 2d 674, 678 (E.D.N.Y. 2002)). Thus, the Court finds that here, Falls Lake's disclaimer, issued within 25 days of notice, was timely as a matter of law. *See id.* ("This court holds as a matter of law that [the insurer's] disclaimer was not untimely. [. . .] A party cannot have the determination of a summary judgment motion postponed upon the mere speculation and hope that discovery will reveal facts supporting a cause of action or defense." (citations omitted)); *Bassuk Bros., Inc.*, 2002 WL 31925593, at *2, *8 ("Rather, [the insurer] specifically disclaimed on the basis of the employee exclusion

only after it had sufficient information to support such disclaimer. Accordingly, the court finds that any delay in disclaiming coverage was reasonable as a matter of law and [the insurer] has not waived its right to[ ]assert such exclusion.").

### CONCLUSION

For the foregoing reasons, the Court **GRANTS** Falls Lake's motion for summary judgment declaring that it has no obligation, pursuant to its insurance policy with Kalnitech, to defend or indemnify any claims asserted in the Underlying Actions. The Clerk of Court is respectfully directed to enter judgment in favor of Falls Lake and close the case.[20]

**SO ORDERED.**

Dated: March 26, 2025
       Brooklyn, New York
                                        _____
                                        **Hon. Kiyo A. Matsumoto**
                                        United States District Judge
                                        Eastern District of New York

---

[20]  By deciding Falls Lake's motion, the Court has resolved Kalnitech's counterclaim seeking a declaration of Falls Lake's obligations pursuant to the Policy. (*See* ECF No. 30, ¶¶ 48-65.) Kalnitech's counterclaim is therefore dismissed. *See Ambac Assurance Corp. v. U.S. Bank Nat'l Ass'n*, 21-70-cv, 2021 WL 6060710, at *5 (2d Cir. Dec. 20, 2021) (affirming dismissal of declaratory judgment request because "no useful purpose would be served" where the requested declaratory relief was "necessarily . . . decided" by the district court when it resolved a related contractual dispute).